**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tommie C. BENDER, Defendant–Appellant.**

**No. 92–2452.**

United States Court of Appeals, Seventh Circuit.

Argued April 30, 1993.

Decided Sept. 20, 1993.

Robert Anderson, Asst. U.S. Atty., Office of the U.S. Atty., Madison, WI (argued), for plaintiff-appellee.

Ralph A. Kalal, Kalal & Habermehl, Madison, WI (argued), for defendant-appellant.

Before CUMMINGS and MANION, Circuit Judges, and EISELE, Chief District Judge.*

MANION, Circuit Judge.

During a valid search of a townhouse, the police caught Tommie C. Bender hiding about one ounce of cocaine base, otherwise known as crack cocaine, down a basement sewer drain pipe. The government charged Bender under 21 U.S.C. § 841(a)(1) with possession with the intent to distribute. Bender was found guilty and sentenced to twelve years in prison. On appeal, he challenges the district court's denial of his motion to reveal the identity of a confidential police informant. Bender maintains that he needed the confidential informant to testify on his behalf, because the informant had information that would have supported his defense. We have jurisdiction pursuant to 28 U.S.C.

* Hon. Garnett Thomas Eisele, Chief Judge of the United States District Court of the Eastern District of Arkansas, is sitting by designation.

§ 1291, and we affirm the court's denial of Bender's motion to disclose the confidential informant.

## I. Background

Working for the police, a confidential informant purchased crack cocaine three times at a townhouse in Madison, Wisconsin. The informant bought the crack mainly from a black male named "Mike" who transacted from an upstairs bedroom in the townhouse. During one of those purchases, the informant saw "Mike" armed with an automatic weapon. The last time the informant purchased crack from "Mike," "Mike" told the informant to come back any time for more drugs. Based on this information, James McCarthy, a Madison police detective, sought and received a "no knock" search warrant from a state-court judge. Detective McCarthy obtained the warrant within forty-eight hours of the informant's last crack cocaine purchase. The police executed the warrant the day they secured it.

Seven police officers arrived at the townhouse during the early evening of January 28, 1992. They had a passkey to the front door, but could not unlock the door because someone on the inside was holding the lockbolt shut. After about ten seconds of trying to unlock the door with the key, the police smashed the door open with a sledgehammer and rushed into the townhouse, announcing that they were police officers. The police discovered and detained three women in the kitchen. In the meantime, one police officer opened the closed basement door and went downstairs, with another officer following. In the basement they found Bender, alone, with his arm down a sewer drain pipe. The police retrieved from the pipe a plastic baggie containing about one ounce of crack cocaine. Near the drain pipe was a table, on which was an electronic scale, a telephone pager, a razor, and plastic baggies. The police arrested Bender for possession with intent to distribute. Between the time the police entered the townhouse and their discovery of Bender, no more than thirty seconds had elapsed.

At trial, Bender testified on his own behalf and presented no other witnesses. (His argument on appeal centers largely on his version of what happened during the search.) He claimed he was in the townhouse unexpectedly. An out-of-town visitor, Bender had been staying with his girlfriend, who lived in an adjacent townhouse. They got into an argument, and Bender left to calm down. He went to the townhouse—where he was arrested—to visit Alicia Young, whom he knew and who rented the townhouse. Bender claimed this was his first visit to the residence.

Bender was sitting on the living room couch when the police broke into the townhouse. He claimed he did not know it was the police, but thought it was an intruder. As Bender retreated into the kitchen, he claimed he saw two people come up from the basement and run out the back door of the residence. (The police saw no one leave the townhouse.) Bender then ran down the basement steps to hide. Once in the basement, he heard the police announce their presence and, at the same time, saw the drug paraphernalia and the crack cocaine. He quickly concluded that the police would link him to the drugs, so he attempted to conceal the crack in the drain pipe. The police discovered him with his hand, gripping the baggie of cocaine, in the pipe.

Before trial, Bender moved the district court to disclose the informant's identity. Bender claimed he needed the informant to testify on his behalf to corroborate his defense that "Mike," not he, was the drug dealer and that he had just been in the townhouse inadvertently. Bender claimed the crack belonged to "Mike" and that "Mike," therefore, was in constructive possession of the drugs at the time Bender was caught hiding them.

The district court denied the motion. The court disagreed with Bender that the informant's testimony was exculpatory. The informant could have testified only to having previously purchased crack from "Mike" in the same townhouse in which Bender was later found stuffing approximately one ounce of crack down a sewer drain pipe. The district court noted that Bender had not claimed that the informant was a witness to, or was involved in, the acts that led to his

arrest. The court also pointed out that the government did not charge Bender with anything that the informant had seen; for example, the government did not charge Bender with conspiring with "Mike" either to distribute the drugs or to possess them with the intent to distribute. The court also stated that Bender could have called other witnesses to substantiate this line of defense.

The jury found Bender guilty. The jury obviously did not believe Bender's story, that in fewer than thirty seconds he had made his way from the living room to the basement in a townhouse he had never been in before, discovered and gathered up the drugs, and found an open drain pipe in which to hide them. Bender moved for a new trial, again arguing that the disclosure of the informant was crucial to his defense. The court denied the motion.

In sentencing Bender, the court determined that his trial testimony was so incredible and contrary to the other evidence that it was materially false. The court, as such, enhanced Bender's sentence under Guidelines section 3C1.1 for obstruction of justice, which led to a twelve-year prison term. Bender then filed this timely appeal.

## II. Analysis

Bender moved the district court to reveal the confidential informant's identity. Bender claimed the informant's testimony was necessary to corroborate his defense that he did not own the drugs and that he did not live in the townhouse, but was there for the first time on a social visit. According to Bender, he just happened to discover the drugs while attempting to hide in the basement from what he thought were intruders. Although he had actual possession of the crack when caught, Bender claimed he lacked the relevant intent to distribute the drugs.

■ Under established law, the government has a limited privilege to withhold the identity of a confidential informant from disclosure. *Roviaro v. United States,* 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The

privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59, 77 S.Ct. at 627. In determining whether to reveal an informant's identity, a district court must balance

> the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628. The government's limited privilege of withholding the identity of an informant gives way once the defendant proves that the disclosure of the informant's identity "is relevant and helpful" to his defense "or is essential to a fair determination of a cause." *Id.* at 60–61, 77 S.Ct. at 627–28; *accord United States v. Andrus,* 775 F.2d 825, 841–42 (7th Cir.1985).

■ We review a district court's denial of a motion to disclose the identity of a confidential informant for abuse of discretion. *See United States v. Lofton,* 957 F.2d 476, 477 (7th Cir.1992); *United States v. Mayomi,* 873 F.2d 1049, 1055 (7th Cir.1989); *United States v. Gutierrez,* 931 F.2d 1482, 1490 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991). "Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court." *United States v. $103,387.27,* 863 F.2d 555, 561 (7th Cir.1988); *accord United States v. Fulford,* 980 F.2d 1110, 1114 (7th Cir.1992).

■ Bender protests that only the informant could have substantiated his claim that his encounter with the drugs was accidental and unforeseen. But that is not the case. His girlfriend and the three women caught with him in the townhouse, especially Alicia Young, could have easily and perhaps more

convincingly verified his story. If these witnesses were not willing to testify on Bender's behalf, he could have compelled their testimony. Fed.R.Crim.P. 17(a); 2 Charles A. Wright, *Federal Practice And Procedure* § 271, at 134 (1982) ("For the defendant [Rule 17] implements his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor.").

Bender's girlfriend could have testified that Bender was visiting her from out of town and that he had left the townhouse after their argument. Alicia Young, who rented the townhouse, could have testified that Bender did not live in the townhouse and, if true, that the ounce of crack was already in the basement and did not belong to him. Young could have also testified about "Mike." For whatever reason, Bender did not have these witnesses testify. Instead, he sought a different course, one more difficult and seemingly more risky. He wanted the court to reveal the identity of the informant, something he knew the government would strongly resist. The court, in its discretion, refused. This set up Bender's "empty chair" defense. But, it also implies that the more obvious witnesses would not have said what Bender wanted the jury to hear.

The public's interest in protecting the free flow of information is strong in this case. Bender has failed to demonstrate that he possesses a genuine need of informant disclosure that outweighs the public's interest. *See Roviaro,* 353 U.S. at 59–62, 77 S.Ct. at 627–28; *Andrus,* 775 F.2d at 842. Understandably, not many people want to become police informants in light of the violence within the drug subculture. Drug dealers are not known for treating informers with compassion. The informant here had some reason or motivation to assist the police in curtailing the drug trade in Madison, Wisconsin. Not only had the informant assisted with information leading to the search of the townhouse, but he or she was also actively involved in other ongoing criminal investigations with the police. Disclosing the informant's identity could have compromised those investigations as well as the informant's own safety.

The role of the informant in this case was unlike that of the informant in *Roviaro,* where the government's limited privilege to withhold the informant's identity gave way. In *Roviaro,* the informant, known as John Doe, "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged." *Roviaro,* 353 U.S. at 55, 77 S.Ct. at 624. Thus, Doe's possible testimony was relevant and could have assisted the defendant in advancing his defense. *Id.* at 64–65, 77 S.Ct. at 629–30.

In contrast to Doe, the informant here was not a transactional witness, that is, he or she was not an active participant in the investigation leading to arrest. Instead, the informant was a "tipster." The information he or she supplied the police led to the acquisition of the search warrant and to the search of the townhouse. The informant had never dealt with Bender and had no role in the search of the residence. The criminal activity the informant had witnessed did not constitute the charges against Bender. For instance, the government did not charge Bender with conspiring with "Mike" to possess or distribute the drugs. The government charged Bender separately from any criminal conduct the informant had witnessed. In short, the informant's role ended after providing the police with the relevant information that served as the foundation for obtaining the search warrant. "When the informant is a mere 'tipster,' rather than a participant or an eye witness to the event in question, disclosure will not be required." *Andrus,* 775 F.2d at 842; *accord United States v. Lewis,* 671 F.2d 1025, 1027 (7th Cir.1982) ("Where the informer is a mere 'tipster,' disclosure of his identity will rarely be appropriate under the balancing test of *Roviaro.*").

Besides, the informant's testimony would have had little significance for Bender's defense. The informer could not have testified that "Mike" was the sole drug dealer in the house. Even though "Mike" told the informant during the last purchase to come back any time for more drugs, that does not mean

that "Mike" was the only dealer in the residence. According to Detective McCarthy's affidavit to secure the search warrant, the informant had purchased drugs in the townhouse from "Mike" *and others*. "Mike" could have been a mere distributor and Bender his supplier. Also, the informant had made all the purchases in an upstairs bedroom of the townhouse, not in the basement. The informant could not have reasonably testified that the ounce of crack in the basement belonged to "Mike" or that the drugs had been there during the informant's last purchase.

Notwithstanding the fact that the informant did not testify, Bender had the opportunity to present to the jury the relevant information contained in Detective McCarthy's affidavit. The contents of the affidavit were based, in relevant part, on the information the informant had supplied the detective. In cross-examining McCarthy about the affidavit, Bender was able to establish that the informant did not buy drugs from Bender, but from another black male. Bender also had McCarthy acknowledge that he had sworn in his affidavit that a black male known as "Mike" lived in the townhouse. Nevertheless, although McCarthy had admitted that his affidavit contained that sworn statement, the detective refused to concede that the statement meant that "Mike" was a resident of the townhouse. McCarthy testified that the statement indicated only "that the person, whether he lives there or not, is inside there—that residence selling cocaine base."

On appeal, Bender points to the contradiction between the affidavit and McCarthy's testimony as proof that he needed the informant to testify. Bender asserts that only the informant could have testified that "Mike" was a resident of the townhouse, implying that "Mike" owned the drugs in the basement. Yet, in spite of the discrepancy in McCarthy's testimony, Bender still presented to the jury McCarthy's sworn affidavit statement that "Mike" lived in the residence. Bender also had the opportunity to use the discrepancy as a means to discredit McCarthy's credibility. Most important, though, the informant was not the only person capable of testifying that "Mike" lived in the townhouse. Alicia Young was a prime candidate for this role. She rented the residence and would have been in the best position to provide this evidence. For whatever reason, Bender did not subpoena her to testify on his behalf.

In sum, Bender has not shown a genuine need to have the informant testify. *Andrus*, 775 F.2d at 842. Bender had available other witnesses who theoretically could have supported his defense, but he did not use them. In addition, the testimony of the informant had no particular significance to Bender's defense, because the informant—a "tipster"—witnessed acts separate from those involving Bender. Furthermore, Bender had the opportunity to present the relevant information contained in Detective McCarthy's affidavit to the jury.

Were we simply to read the cold record on appeal, we might find plausible Bender's unusual excuse for being caught "red-handed." But the district court, which observed the testimony of Bender and the other witnesses, found his story "totally incredible." In fact, the district court found Bender's story so farfetched that it enhanced his sentence under Guidelines section 3C1.1 (obstruction of justice) for committing perjury while on the witness stand. Given this observation, along with Bender's failure both to call other witnesses and to show the necessity of the informant's testimony, we conclude that the district court did not abuse its discretion in denying the motion to disclose the informant's identity. Under these circumstances any reasonable person could agree with the court's decision. *See Fulford*, 980 F.2d at 1114; *$103,387.27*, 863 F.2d at 561.[1]

---

1. Bender also challenged on appeal the constitutionality of his sentence. He argued that the district court acted unconstitutionally when it enhanced his sentence under Guidelines section 3C1.1. Before oral argument, however, Bender moved to withdraw the issue in light of *United States v. Dunnigan*, — U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), handed down after he filed his Initial Brief. *Dunnigan* permits such an enhancement, *id.* at ——, ——, 113 S.Ct. at 1113, 1119, as does the pre-existing law of this circuit. *E.g., United States v. Easley*, 977 F.2d 283, 287 (7th Cir.1992). Accordingly, we grant Bender's motion and will not consider this issue further.

### III. Conclusion

The district court did not abuse its discretion in denying Bender's motion to disclose the identity of the confidential informant. Therefore, we AFFIRM the district court.