UNITED STATES of America, Plaintiff,

v.

Vinol Scott WILSON, Defendant.

No. 95–40052–01–SAC.

United States District Court,
D. Kansas.

Aug. 25, 1995.

Charles D. Dedmon and David J. Phillips, Office of Federal Public Defender, Topeka, KS, for defendant.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for the U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion to reveal identity of confidential informant (Dk. 18) and motion to suppress (Dk. 20). On August 17, 1995, the parties presented argument and evidence on the defendant's motions. Having read the briefs, heard the evidence and researched the controlling law, the court is ready to rule.

**INDICTMENT**

The indictment charges the defendant, Vinol Scott Wilson ("Wilson") with three counts. The first count charges that Wilson on or about November 3, 1994, possessed with the intent to distribute 9.48 grams of a mixture or substance containing cocaine base or crack cocaine in violation of 21 U.S.C. § 841(a)(1). The second count charges that Wilson on or about November 3, 1994, used a pistol-gripped twelve gauge shotgun during and in relation to a drug trafficking crime in violation of 21 U.S.C. § 841(a)(1). The third count charges that Wilson on or about November 3, 1994, used a 9mm pistol during and in relation to a drug trafficking crime in violation of 21 U.S.C. § 841(a)(1).

## MOTION TO REVEAL IDENTITY OF CONFIDENTIAL INFORMANT

■ Arguing *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its progeny, Wilson seeks a court order requiring the government to disclose the identities and addresses for the two confidential informants whose statements served as the basis of the search warrant. Wilson asserts the informants directly participated in the illegal activity on which the criminal charges are brought. With respect to the first informant who purchased cocaine from Tibbs at Wilson's apartment, Wilson argues this informant's testimony would corroborate his defense that he did not possess the cocaine found in his apartment and would contradict any possible testimony from Tibbs implicating Wilson in drug trafficking activities. Wilson emphasizes that evidence of others selling drugs from his apartment is significant with regards to whether Wilson constructively possessed the cocaine found in his apartment. As to the second informant who purchased cocaine from Jelani Lewis at 1733 S.W. Clay, Wilson contends this testimony also would be relevant on issues of intent and constructive possession. For several reasons, Wilson's arguments are unavailing.

The government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro,* 353 U.S. at 59, 77 S.Ct. at 627. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* It is a limited privilege that gives way "[w]here the disclosure of an informer's identity, or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60–61, 77 S.Ct. at 627–28. The government has the right to assert the privilege without any preliminary showing of likely reprisal or retaliation against the informant. *United States v. Valles,* 41 F.3d 355, 358 (7th Cir.1994) (citation omitted).

The decision to reveal a confidential informant's identity involves balancing the defendant's asserted need against the government's interest considering "the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628. The informant in *Roviaro* was a participant in the **charged** criminal activity. While holding that the informant's identity should have been disclosed, the Court emphasized that "no fixed rule with respect to disclosure is justifiable" and that each case is subject to the balancing test described above. 353 U.S. at 62, 77 S.Ct. at 628.

■ The two central factors in the balance are the informant's level of participation in the illegal activity for which the criminal charges are brought and the probative value of the informant's probable testimony. *United States v. Nixon,* 777 F.2d 958, 967 (5th Cir.1985); *United States v. Ridley,* 814 F.Supp. 992, 996 (D.Kan.1993). Thus, the oft-stated rule is that disclosure is not required when the confidential informant did not participate in the illegal activity and the informant's probable testimony would be cumulative. *See, e.g., United States v. Leahy,* 47 F.3d 396, 398 (10th Cir.1995); *United States v. Moralez,* 908 F.2d 565, 567 (10th Cir.1990). When the informant's role was nothing more than a mere tipster, "disclosure is required only in the exceptional case where it is vital to a fair trial." *United States v. Lewis,* 40 F.3d 1325, 1335 (1st Cir. 1994) (citation omitted).

The burden rests with the defendant to show "a genuine need of . . . disclosure that outweighs the public's interest." *United States v. Bender,* 5 F.3d 267, 270 (7th Cir. 1993); *see United States v. Martinez,* 979 F.2d 1424, 1426 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1824, 123 L.Ed.2d 454 (1993). The defendant may not rely on mere speculation to meet this burden. *Moralez,* 908 F.2d at 567; *see Leahy,* 47 F.3d at 398 ("A CI's [confidential informant's] testimony must be shown to be valuable to a

defendant; mere speculation is not enough." (citation omitted)). "The confidential informant privilege 'will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful.'" *Valles,* 41 F.3d at 358 (quoting *Dole v. Local 1942, IBEW,* 870 F.2d 368, 373 (7th Cir.1989)). "'The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence.'" *United States v. Blevins,* 960 F.2d 1252, 1259 (4th Cir.1992) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 510[06] (1991)); *see also Ridley,* 814 F.Supp. at 996.

Despite Wilson's arguments to the contrary, the informants here are not direct participants in or percipient or transactional witnesses to the crimes charged. Neither informant actively participated in a investigation that targeted Wilson. At most, both informants were mere tipsters. They provided the information that led to the search warrant and to the search of Wilson's apartment. The record does not show that either informant said they had purchased drugs from Wilson. Neither informant was present during the search of Wilson's residence. Whatever the informants participated in or witnessed two days before the search is not the basis on which the criminal charges are brought. Wilson is charged with offenses—possession with the intent to distribute the crack cocaine and use of firearm during and in relation to a drug trafficking crime—based on what the officers found during their search. These counts have nothing to do with either of the drug sales made to the informants. Wilson is not charged with conspiring with Tibbs or Lewis to possess or distribute the crack cocaine. "In short, the informant's role ended after providing the police with the relevant information that served as the foundation for obtaining the search warrant." *United States v. Bender,* 5 F.3d at 271.

Wilson is unable to show that the informants' **probable** testimony would be material and relevant to his defense that he did not intentionally possess the crack cocaine or

firearms. There is nothing in the record to suggest that the informants were in any position to know whether Tibbs and Lewis were the only persons at the duplex to deal drugs or, more importantly, were the only ones there to possess drugs. *See Bender,* 5 F.3d at 270. Their affidavits simply show themselves to be regular informants who had learned of information that crack cocaine was being sold at this duplex. Nor is it significant to Wilson's defense that the informants are able to implicate others, but not the defendants, with regard to drug activity that is not the subject of the criminal charges. Finally, because the first informant saw Tibbs take the cocaine from his pocket, there is no reasonable basis to believe that the informant could testify that the cocaine found during the search of Wilson's apartment was Tibbs. *See Bender,* 5 F.3d at 271.

The facts here are not "strikingly similar" to those in *Moralez,* as Wilson argues. In *Moralez,* 908 F.2d at 567, the confidential informant told officers that an individual named Sanchez was dealing marijuana out of a service station. After conducting surveillance, officers arrested Sanchez, Pinelli and Moralez at the service station on various charges, including conspiracy to possess with the intent to distribute marijuana. Moralez asked for disclosure of the confidential informant arguing the informant had witnessed the crime and would be the only testimony supporting his defense that he was not involved in Sanchez's drug operations and just happened to be in the wrong place at the wrong time. The district court denied disclosure accepting the government's representation that the informant was a mere tipster. On appeal, the Tenth Circuit remanded the case for the district court to conduct an in camera hearing "to determine whether the informant's testimony is relevant and whether disclosure is warranted." 908 F.2d at 568. The appeals court said this about the possible relevance of the informant's testimony:

On the record before this court, we are unable to determine the degree of involvement of the confidential informant. It is distinctly possible this informant was more than a mere tipster. It would appear the informant witnessed at least the preparations of the crime and saw Mr. Sanchez in

possession of the truck used to transport the marijuana. Further, the informant heard statements from Mr. Sanchez regarding possession of the marijuana, storage at the service station, and the ongoing process of weighing and packaging the marijuana for redistribution.

908 F.2d at 568. In contrast, there is no distinct possibility that the informants in the instant case were more than mere tipsters. There is no plausible factual basis for inferring that the informants witnessed the involvement of Tibbs, Lewis, or anyone else with the drugs later found in Wilson's apartment and, in particular, the rock cocaine that apparently came from the Wilson's bedroom where he and his girlfriend, Lucia Daniels, were the only occupants at the time of the search. Nor is there anything to suggest that the informants would be material witnesses to whether Wilson constructively possessed the rock cocaine that Lucia Daniels apparently threw from Wilson's bedroom. Finally, the informants have not been shown to have witnessed any events from which they could testify as to Wilson's lack of involvement in the drug trafficking activity occurring in his apartment. *Moralez* is not persuasive authority that the disclosure or an in camera hearing is required here, for unlike *Moralez,* Wilson's request is a fishing expeditions based only on speculation.

During oral argument, Wilson's counsel referred the court to *State v. Washington,* 244 Kan. 652, 772 P.2d 768 (1989), a case in which he had argued successfully that the trial court had erred in denying the defendant's motion to disclose the informant's identity without first conducting an in camera hearing. The court does not agree with defense counsel that *Washington* stands for the broad rule that informants for search warrants also may possess relevant information in drug cases based on constructive possession theories. In *Washington,* the informant had been at the defendant's motel room "immediately prior to the defendant's arrest" and the evidence that the defendant possessed the drugs found in a bag in the motel room was "extremely circumstantial [in] nature." 244 Kan. at 659, 772 P.2d 768. Under such circumstances, the informant "may logically possess information directly relevant to

the alleged criminal events themselves." *Id.* The factual distinctions between *Washington* and case at issue are obvious. In short, the court finds no logical inference argued by the defendant demonstrating that the informants have information relevant to the criminal charges or to his defenses.

## MOTION TO SUPPRESS

Wilson argues that the search warrant was defective in the following respects: (1) the underlying affidavit of Officer Brian Hill was insufficient to establish probable cause to search the Wilson's rented premises at 1735 S.W. Clay; (2) the warrant was facially overbroad in authorizing the searches of the defendant, Lucia Daniels, and all persons found in 1735 S.W. Clay; and (3) the issuing judge abandoned his neutral and detached role. Wilson also argues that the execution of the search warrant was defective in that the state officers entered the premises at night without first announcing their presence.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *United States v. Janus Industries,* 48 F.3d 1548, 1552 (10th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3017 (May 26, 1995) (No. 94–2123). Thus, there are two requirements for search warrants: "probable cause supported by an oath or affirmation and a particular description of the place, persons and things to be searched and seized." *United States v. Mesa–Rincon,* 911 F.2d 1433, 1436 (10th Cir. 1990).

■ On a challenge to the sufficiency of the underlying affidavits, the reviewing court accords "great deference" to the issuing magistrate's determination. *United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir. 1992). " 'The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for … concluding that probable cause existed,' not to second-guess the magistrate." *United States v. McKneely,* 6 F.3d 1447, 1455 (10th Cir.1993) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)).

Probable cause is determined from the totality of the circumstances:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The underlying affidavit is to be read " 'in a common sense and nontechnical manner.' " *Edmonson,* 962 F.2d at 1540 (quoting *United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir.1982)).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.) ("The existence of probable cause is a 'common-sense standard' requiring 'facts sufficient "to warrant a man or reasonable caution in belief that an offense has been committed." ' ") (quoting *United States v. Mesa–Rincon,* 911 F.2d 1433, 1439 (10th Cir.1990) (quoting *Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)))), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).

■ When the suppression motion does not raise any important Fourth Amendment questions, the court need not decide whether the affidavit provides probable cause; instead, it may consider immediately the officers' good faith. *United States v. Leon,* 468 U.S. 897, 925, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984) (recognized an exception to exclusionary rule where evidence seized pursuant to a warrant later held invalid is still admissible if the executing officers acted in good faith and with reasonable reliance on the warrant); *see United States v. Dahlman,* 13 F.3d 1391, 1397 (10th Cir.1993) (the pre-ferred sequential order of analysis of good faith cases is to decide the Fourth Amendment issues first "unless there is no danger of 'freezing' Fourth Amendment jurisprudence or unless the case poses 'no important Fourth Amendment questions.' " (quoting *Leon,* 468 U.S. at 924–25, 104 S.Ct. at 3421–22)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994); *United States v. McKneely,* 6 F.3d at 1454 (" 'Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter." (quoting *United States v. Craig,* 861 F.2d 818, 820 (5th Cir.1988)).

In *Leon,* the Court said that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 104 S.Ct. at 3418. To determine if the good-faith exception applies, the court's "inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. The court answers this question after considering "all of the circumstances," *id.,* and assuming that the executing "officers ... have a reasonable knowledge of what the law prohibits," *id.* at 919 n. 20, 104 S.Ct. at 3418 n. 20. The court must "review the text of the warrant and the affidavit to ascertain whether the agents might have 'reasonably presumed it to be valid.' " *United States v. Corral–Corral,* 899 F.2d 927, 932 (10th Cir. 1990) (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420). Ultimately, the court must decide whether "the officer is acting as a reasonable officer would and should act in similar circumstances." *Leon,* 468 U.S. at 920, 104 S.Ct. at 3419. The burden rests with the government to prove the executing officer's reliance was objectively reasonable. *United States v. Leary,* 846 F.2d 592, 607 n. 26 (10th Cir.1988).

The Court in *Leon* also described four situations where the exclusionary rule still

applies to evidence obtained pursuant to an invalid search warrant: (1) the magistrate relies on a deliberately or recklessly false affidavit; (2) the magistrate abandons his neutral and detached judicial duties; (3) the underlying affidavit so lacks the indicia of probable cause that any belief in probable cause is necessarily unreasonable; and (4) the warrant is so facially deficient that its validity cannot reasonably be presumed. *Corral–Corral,* 899 F.2d at 933. Wilson essentially argues the second and third exceptions here.

■ The court first addresses the third exception. The question presented is whether "the affidavit is so lacking facts that a reasonably well trained officer would have known that the search was illegal despite judicial authorization." *United States v. Cook,* 854 F.2d 371, 374 (10th Cir.1988) (citation omitted), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). Good faith is absent only when the officer's reliance on the underlying documents is " 'wholly unwarranted.' " *McKneely,* 6 F.3d at 1454 (quoting *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985)). The reviewing court determines "whether the underlying documents are *'devoid* of factual support, not merely whether the facts they contain are legally sufficient.' " *Id.* If the affidavit is not devoid of factual support, the executing officer is " 'entitled to rely in good faith upon' " the issuing judge's decision. *McKneely,* 6 F.3d at 1454 (quoting *United States v. Wright,* 791 F.2d 133, 135 (10th Cir.1986)). "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon,* 468 U.S. at 921, 104 S.Ct. at 3419 (footnote omitted).

■ Though Officer Hill's affidavit hardly qualifies as a model of specificity, the court does not find it so lacking in the indicia of probable cause as to render any reliance on it entirely unreasonable. It neither is a bare bones affidavit nor is devoid of factual support. Probable cause does require a nexus between the place to be searched and the evidence of criminal activity to be seized. *Corral–Corral,* 899 F.2d at 937. The nexus can be demonstrated by inferences such as are supported by the nature of the items or where the items are likely to be kept. *United States v. Lalor,* 996 F.2d 1578, 1582 (4th Cir.1993). Officer Hill's affidavit establishes the nexus between the evidence and 1735 S.W. Clay upon the following facts: (1) Virgil Tibbs is selling cocaine from both sides of a duplex at 1733 and 1735 S.W. Clay; (2) Vinol Wilson lives at 1735 S.W. Clay with his girlfriend, and Jelani Lewis lives at 1733 S.W. Clay; (3) Within the last forty-eight hours, the informant purchased cocaine from Virgil Tibbs at 1735 S.W. Clay; (4) Tibbs showed the informant a supply of 40 individually wrapped rocks of cocaine, and the informant buys one rock; (5) As the informant left 1735 S.W. Clay, Tibbs told the informant that he could come back later and find Tibbs around one of the apartments;[1] and (6) The neighbors had complained frequently to the landlord of the duplex, James Griggs, about loud music and possible drug activity. The evidence shows that Tibbs represented to the informant that he could be found at Wilson's apartment or the adjacent apartment should the informant want additional drugs. The inference to be drawn from this is that Tibbs had continuous access to 1735 S.W. Clay and regularly used it to sell drugs. Though the affidavit says that the informant saw Tibbs remove the drugs from his pocket, the fact

---

1. Wilson argues the affidavit is stale absent some averment that Tibbs either resided at the apartments or had said he was staying over for the next forty-eight hours. The court believes the information was timely considering " 'the nature of the criminal activity, the length of the activity, and the nature of the property seized.' " *United States v. Pace,* 981 F.2d 1123, 1133 (10th Cir. 1992) (quoting *United States v. Shomo,* 786 F.2d 981, 984 (10th Cir.1986)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). The affidavit establishes that Tibbs had been sell-

ing cocaine from the apartment, that he had sold cocaine in the apartment within the last forty-eight hours, and that he intended to sell more cocaine in the apartment later. It is enough that the affidavit shows ongoing criminal activity and suggests nothing to indicate the activity is likely to soon. In light of Tibbs' open-ended invitation to come back later, it is not significant that the affidavit fails to reveal Tibbs' precise intentions or actions with respect to visiting or residing at the duplex. The mere passage of forty-eight hours did not make the information stale.

remains that the drugs had been sold in Wilson's apartment. It is a fair inference that drugs were probably sold there regularly and that evidence of this drug activity probably could be found there. In short, the affidavit is not so lacking in probable cause that the executing officer's reliance on it was objectively unreasonable.

■ On the second *Leon* exception, Wilson contends certain discrepancies in the affidavit show the issuing judicial officer served as a mere rubber stamp for the police officers, thereby abandoning his neutral and detached role as a judicial officer. Wilson points to the affiant's averment that cocaine would be found at 1733 S.W. Clay followed by the request for a warrant to search 1735 S.W. Clay. Wilson also calls attention to the affiant's request to search Vinol Wilson and Lucia Daniels in the complete absence of any probable cause to support such a search.

An issuing judicial officer that fails to " 'manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." *Leon,* 468 U.S. at 914, 104 S.Ct. at 3416 (quoting *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979) (holding that the issuing judicial officer had acted as an "adjunct law enforcement officer" when he "allowed himself to become a member, if the not the leader, of the search party which was essentially a police operation.")). The neutral and detached functions are not performed when the judge merely rubber stamps a law enforcement officer's application or merely ratifies the law enforcement officer's bare conclusions. *Aguilar v. Texas,* 378 U.S. 108, 111, 114–15, 84 S.Ct. 1509, 1514–15, 12 L.Ed.2d 723 (1964). "[A] search premised on a warrant issued by a magistrate judge who lacks such neutrality and detachment 'stands on no firmer ground than if there had been no warrant at all.' " *United States v. Ramirez,* 63 F.3d 937, 941 (10th Cir.1995) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971)).

■ In determining whether the issuing judge was neutral and detached, the court must conduct "an individualized and contextual inquiry" of the particular case focusing on the "specific circumstances surrounding the issuance of the warrant." *Ramirez,* 63 F.3d at 941. Although defendants allege that the magistrate merely acted as a "rubber stamp" to the affidavit for the search warrant, there is no credible evidence to support that allegation or to support a finding that the issuing judge did not objectively evaluate the information before him. The issuance of a search warrant for the persons of Vinol Wilson and Lucia Daniels does not demonstrate that the state judge abandoned his judicial discretion. This court cannot say definitively that the affidavit furnishes no factual basis for inferring a nexus between these individuals and Tibbs' drug activity.[2] The final averment that evidence is "currently located at 1733 S.W. Clay," instead of 1735 S.W. Clay, appears to be nothing more than a clerical oversight.[3] That the mistake went undetected is not credible evidence the issuing judge did not exercise his discretion but merely rubber stamped the police officer's request. The facial deficiencies with the warrant and affidavit, as argued by Wilson, are not reliable indicia that the issuing judge has abandoned his neutral and detached function. In the absence of any evidence to the contrary, Wilson's allegations are nothing more than unsubstantiated surmise.

---

**2.** The government reveals that no evidence was obtained in the search of Vinol Wilson and that Lucia Daniels abandoned her property in the presence of the officers. Consequently, the court need not concern itself with whether the warrant was overbroad in authorizing the search of Vinol Wilson and Lucia Daniels.

**3.** Officer Hill testified at the hearing that he prepared the search warrant applications for both 1733 S.W. Clay and 1735 S.W. Clay and that both applications were submitted to the state judge. These circumstances plainly indicate a mere oversight occurred and the judge simply failed to notice and correct the wrong address in one of the two applications. These hardly amount to circumstances indicative of a judge abandoning his duties.

■ Wilson alternatively argues the evidence should be suppressed because the officers executed the search warrant in violation of his Fourth Amendment rights. Specifically, Wilson alleges the officers smashed through the front door without advance announcement of their presence. There is no factual dispute that the officers executing the search warrant did not announce their presence prior to entering Wilson's apartment and that the officers did not have a "no-knock" warrant. Wilson argues that the officers can offer no exigent circumstances to justify their unannounced entry into his home.

"Evidence seized by state officers will be suppressed in a federal prosecution if the search violated the Fourth Amendment." *United States v. Moland,* 996 F.2d 259, 260 (10th Cir.1993) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 722, 126 L.Ed.2d 686 (1994). The knock-and-announce principles found in common law, namely that officers generally announce their presence and authority before entering a home, are part of the reasonableness inquiry under the Fourth Amendment. *Wilson v. Arkansas,* —— U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *see United States v. Smith,* 63 F.3d 956, 962 (10th Cir.1995) ("Although the principle is commonly referred to as 'knock and announce,' the Court's holding in *Wilson* requires only an announcement.") This is neither an inflexible or rigid rule of announcement, rather it may yield to "countervailing law enforcement interests." *Id.*

■ For a "no knock" search to be reasonable, the court must find that the officers had particular reasons to believe that exigent circumstances existed. *United States v. Stewart,* 867 F.2d 581, 585 (10th Cir.1989). "The term 'exigent circumstances,' in conjunction with the entry of a residence during the execution of a search warrant, refers to those situations where 'the officers believe there is an emergency situation and ... their belief is objectively reasonable.'" *Id.* at 584 (quoting *United States v. Spinelli,* 848 F.2d 26, 29 (2nd Cir.1988)). The reasonableness inquiry focuses on what particular facts regarding the premises that the officers' knew at the time. *Stewart,* 867 F.2d at 584. Two of the most common and compelling exigent circumstances are "where the officers at the premises reasonably believed that waiting for a response before entering the premises would create an opportunity for the occupants to destroy relevant evidence or to prepare an attack against them." *United States v. Kennedy,* 32 F.3d 876, 882 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995); *see also United States v. Reece,* 886 F.Supp. 1544, 1550 (D.Kan.1995).

The offense with which the targets of the investigation were to be charged, trafficking in crack cocaine, is a serious offense. *United States v. Brown,* 52 F.3d 415, 421 (2nd Cir. 1995). The officers knew that drug sales were occurring at both apartments of the duplex and that the operations were probably connected as evidenced by Tibbs' comment that he could be found at either apartment. Based on their information, the officers believed that the duplex was a crack house and that there was a lookout at 1735 S.W. Clay. For these reasons, the officers executed the warrants on the two apartments at the same time.

The crack cocaine rocks, which were the object of the search, were easily capable of being destroyed. The informants had observed that the rocks were individually packaged in small amounts. One informant had told officer Hill, who was one of the officers executing the warrant, that Jelani Lewis, the tenant at 1733 S.W. Clay had spit several rocks of cocaine from his mouth and sold the informant one of those rocks. From their experience in executing warrants on crack houses, the officers knew that often the crack houses are occupied by purchasers who are using the drugs. They also have seen instances where dealers have arranged for the rock cocaine to be kept in the bathroom so that it could be quickly flushed down the toilet in the event of a raid. There was a reasonable basis for believing that unless the officers acted quickly the drug dealers would destroy the drugs. *See United States v. Moore,* 956 F.2d 843, 850 (8th Cir.1992) ("It is reasonable for police officers to assume that suspects selling illegal drugs in small quantities from a residence that has normal plumbing facilities will attempt to destroy

those drugs.…"). In fact, when the officers executed the warrants, they restrained Jelani Lewis in 1733 S.W. Clay and one visitor at 1735 S.W. Clay from swallowing rock cocaine found in their mouths. They also found Lucia Daniels outside of the back bedroom window and a package of rock cocaine within throwing distance.

The officers knew there were people in Wilson's apartment. Looking through the glass screen door, they could see people in the living room. The officers had reason to fear that the people inside in the apartment would be armed and dangerous.

" '[T]he law has "uniformly recognized that substantial dealers in narcotics possess firearms" ' and that 'entrance into a situs of drug trafficking activity carries all too real dangers to law enforcement officers.' " *United States v. Kennedy*, 32 F.3d at 882 (quoting *United States v. Bonner*, 874 F.2d 822, 826 (D.C.Cir.1989) (quoting in turn *United States v. Payne*, 805 F.2d 1062, 1065 (D.C.Cir. 1986)); *see United States v. Singer*, 943 F.2d 758, 763 (7th Cir.1991) (the federal judiciary has recognized "that firearms are an integral part of the drug trade." (citations omitted)); *but see Stewart*, 867 F.2d at 585 (generalities about drug dealers or drug trafficking do not establish exigent circumstances unless corroborated as existing in the particular case). Experience has taught these officers that guns are likely to be found in crack houses. As demonstrated by Officer Hill's testimony, the nature of this drug business and the fact that crack sales are made at all hours of night support the concern over weapons in crack houses.

Apart from this general knowledge that guns are a frequent and integral element of drug trafficking, the officers had particular reasons to suspect that guns were present in Wilson's apartment. Prior to the search, Officer Hill conferred with an officer specializing in gangs and learned that Wilson was a member of the Vice Lords gang and that members of this gang were known to carry guns. During prior car stops, officers had found guns within Wilson's immediate proximity. In fact, when they executed the warrant, officers found a 9mm pistol at Wilson's

feet and a pistol-gripped shotgun in his closet.

Considering the totality of the circumstances discussed above, the court finds that the unannounced execution of the warrant was not unreasonable search under for Fourth Amendment. The failure to announce was fully justified by exigent circumstances.

IT IS THEREFORE ORDERED that the defendant Wilson's motion to reveal identity of confidential informant (Dk. 18) and motion to suppress (Dk. 20) are denied.