In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3629

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DARIUS JEFFERSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-CR-30177-DRH--David R. Herndon, Judge.

ARGUED March 1, 2001--DECIDED June 6, 2001

   Before HARLINGTON WOOD, JR., MANION, and
DIANE P. WOOD, Circuit Judges.

   HARLINGTON WOOD, JR., Circuit Judge.
Defendant-appellant Darius Jefferson was
convicted following a jury trial of five
counts relating to the distribution of
cocaine base, also known as "crack"
cocaine, including conspiracy to
distribute cocaine base (Count 1),
maintaining a place for the purpose of
distributing cocaine base (Count 2),
possession with intent to distribute
cocaine base (Count 3), possession of a
firearm during and in relation to a drug
trafficking offense (Count 4), and being
a felon in possession of a firearm (Count
6). On appeal, Jefferson challenges the
district court's denial of his motion for
disclosure and production of a
confidential informant, the sufficiency
of the evidence, and his sentence.

I.  BACKGROUND

   On June 28, 1999, a special agent with
the Drug Enforcement Administration
("DEA") applied for and was issued a
search warrant for a residence located at
748 North 55th Street, East St. Louis,
Illinois. The application for the search
warrant relied in part on statements by a
confidential informant who had made three
drug buys from the location within a ten-
day period just prior to the date of the

application. When the warrant was executed, Jefferson was found in the bathroom of the residence. Finley McCoy, Jr. was found running away from the living room of the residence. Another individual was found in the bedroom. During the search of the residence, police discovered 3.6 grams of crack cocaine as well as a loaded shotgun and two loaded revolvers in the living room. Another loaded shotgun was found in the bedroom. While searching Jefferson's pants pockets, agents discovered approximately 1.8 grams of crack cocaine packaged for resale and $77. Other items connected with drug trafficking, including a digital scale and numerous plastic baggies, were found lying around the house.

While the search warrant was being executed, McCoy gave the agents consent to search a car that was parked in the driveway of the house. During their subsequent search of the vehicle, agents discovered approximately 4.6 grams of powder cocaine and 18.6 grams of crack cocaine. Following the search, Jefferson was taken into custody. The agents advised him of his Miranda rights and then interviewed him. Jefferson signed a written statement, admitting he had been going to the house on 55th Street since May 1999 and had been selling $20 rocks of crack cocaine from the house for approximately one week. Jefferson stated that McCoy supplied the crack and that the guns which were seized had been used for "protection."

On July 21, 1999, a federal grand jury returned a six-count indictment charging Jefferson and McCoy for conduct relating to the distribution of crack cocaine. Jefferson was charged in five of the six counts. On October 6, 1999, Jefferson filed a motion seeking the disclosure and production of the government's confidential informant. The government filed a response to Jefferson's motion on October 7. The district judge held a hearing on the motion that same day and ruled on the substantive issues involved in the motion despite his belief that the motion was untimely because it was filed less than one week before trial was scheduled to begin and after the period set for pretrial discovery motions had expired. The judge denied the motion, stating Jefferson had failed to show that

the confidential informant would be either relevant or helpful as a witness and, as a result, the disclosure was "certainly not essential to a fair determination of th[e] case."

McCoy pleaded guilty pursuant to a plea agreement and testified as a government witness at Jefferson's trial. Jefferson's jury trial began on October 13, 1999. During the trial, McCoy testified that he, Jefferson, and two other men contributed to pay the rent for the 55th Street house which they used as a drug house. McCoy stated that Jefferson had been selling drugs from the house since May 1999 and that he had seen Jefferson sell approximately three ounces of crack cocaine in small quantities ranging in value from $20 to $50. McCoy's trial testimony was consistent with statements he made at the time of his arrest. However, following his first appearance, while he was being housed in the St. Clair County Jail, McCoy wrote a letter to Magistrate Judge Proud who had conducted his first appearance. In the letter, McCoy informed the judge that he had made a false statement when he implicated others in the drug dealing. McCoy stated that he was the only one selling drugs out of the 55th Street house and he had lied about the other individuals' involvement because he was scared. However, McCoy wrote, he now realized his untruths had caused "heartache" to many people. The letter went on to state that Jefferson was "just visiting" the house at the time the warrant was executed and that McCoy knew that Jefferson did not sell drugs. At trial, McCoy testified the letter was a lie and he had written it with the help of Jefferson, who was his cellmate at the time. McCoy explained he had written the letter because Jefferson and another individual involved in the drug dealing had informed him that if McCoy took full responsibility for the drug dealing the government would be forced to drop the conspiracy charges. McCoy testified that, after consulting with his attorney, he realized writing the letter was not the correct thing to do, so he then contacted the United States Attorney's Office and told them the truth about the matter.

On October 15, the jury returned guilty verdicts against Jefferson on all five counts charged. At sentencing, the

district court determined that Jefferson had a base offense level of 32 under U.S.S.G. sec. 2D1.1. The judge then increased Jefferson's offense level by two for obstruction of justice under U.S.S.G. sec. 3C1.1, which resulted in a total offense level of 34. Jefferson had a criminal history category of II. The district judge sentenced Jefferson to 270 months imprisonment followed by five years supervised release. Specifically, Jefferson was sentenced to 210 months imprisonment for Counts 1, 2, and 3, a consecutive term of 60 months on Count 4, and a concurrent term of 120 months on Count 6. The district judge also imposed a fine of $5,000 and a special assessment of $500. Jefferson filed this timely appeal.

II.  ANALYSIS

  A. Disclosure and Production of the Confidential Informant

  Jefferson contends the district court erred in denying his motion for disclosure and production of the confidential informant, arguing that the informant's testimony would have supported his assertion that he was merely a customer at the residence at the time the warrant was executed. We review a district court's denial of a motion for disclosure of the identity of a confidential informant for abuse of discretion and will affirm if any reasonable person could agree with the district court's decision. United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994).

  The government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant. Roviaro v. United States, 353 U.S. 53, 60 (1957). As the Supreme Court has recognized, citizens have an obligation to communicate their knowledge of the commission of crimes to law enforcement officials. Id. at 59. By preserving anonymity, this privilege encourages citizens to perform that obligation. Id. In determining whether to disclose a confidential informant's identity, a court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. Therefore, in order to overcome the

limited privilege, a defendant must establish that the disclosure of the informant's identity is either "relevant and helpful" to his defense or "essential to a fair determination of a cause." Id. at 60-61.

Jefferson points out that the police reports indicate the informant had been at the scene just five minutes before the execution of the search warrant./1 Jefferson contends that the informant would testify that Jefferson was the person who opened the door for him when he visited the residence on June 28 and that the informant had never seen Jefferson before that time. Jefferson also asserts that, based on the three drug purchases, the confidential informant "arguably had extensive knowledge of the activities of those conducting business in this drug house." Jefferson believes the fact that the informant never dealt directly with him and never saw Jefferson before Jefferson opened the door of the residence on June 28 completely exonerates him.

We examined a similar claim in United States v. Bender, 5 F.3d 267 (7th Cir. 1993). In Bender, the defendant was charged with possession of crack cocaine with intent to distribute after being found in possession of crack cocaine when a "no knock" search warrant was executed at a townhouse. Id. at 267-68. The search warrant in Bender was issued based on the fact that a confidential informant had made three purchases of crack cocaine from the townhouse from individuals other than the defendant. Id. at 268. Bender claimed he did not own the drugs he had been holding and was in the townhouse for the first time on a social visit when the warrant was executed. Id. at 269. The panel in Bender affirmed the denial of Bender's motion to disclose the identity of the confidential informant, characterizing the informant as a "tipster" rather than a transactional witness. Id. at 270. The panel recognized that the charges against Bender were not based on criminal activity the informant had witnessed and, therefore, the informant's testimony had "no particular significance to Bender's defense." Id. at 271. The panel further noted that Bender had available other witnesses who, because of their closer involvement, could have "easily and perhaps more

convincingly" corroborated his story. Id. at 269-70.

Even assuming the confidential informant would testify as Jefferson claims he would, Jefferson has not shown that such testimony would be particularly significant to his defense. Unlike the defendant in Bender, Jefferson's charges included charges of conspiracy. However, the charges against Jefferson were based on evidence which was obtained when the search warrant was executed and statements made by Jefferson and McCoy at the time of their arrests, not on any criminal activity the confidential informant had witnessed. The confidential informant was a mere "tipster," who provided law enforcement officials with information which led to the acquisition of the search warrant. Although the informant had been present at the residence shortly before the warrant was executed, his role ended at the conclusion of the third drug buy, and he was not present when the warrant was executed and the search was conducted or when the post-arrest statements were made. As the panel in Bender recognized, the public has a strong interest in protecting the free flow of information in cases such as these and "not many people want to become police informants in light of the violence within the drug subculture." Bender, 5 F.3d at 270. The district court did not abuse its discretion in denying Jefferson's motion for disclosure and production of the confidential informant.

B. Sufficiency of the Evidence

Jefferson claims the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support a guilty verdict on any of the charges alleged in the indictment. In reviewing sufficiency of the evidence claims, we must view the evidence in the light most favorable to the government and will "reverse only if the record contains no evidence from which the jury could find guilt beyond a reasonable doubt." United States v. Combs, 222 F.3d 353, 362 (7th Cir. 2000). Jefferson first challenges McCoy's testimony, characterizing it as "self-serving and unreliable" and completely refuted by Jefferson's own testimony.

Jefferson further asserts that the evidence is insufficient because he was not listed as a tenant of the house with the housing authority, his name was not on the utilities, and the government did not produce physical evidence linking him to the guns and drugs in the house. In United States v. Williams, 216 F.3d 611, 613-14 (7th Cir. 2000), we examined, and rejected, similar arguments, recognizing that, absent exceptional circumstances not alleged in this case, credibility determinations are within the province of the jury and will not be disturbed on appeal. Jefferson had the opportunity to impeach McCoy with the prior inconsistent statements contained in the letter to Judge Proud. McCoy's testimony, viewed in the light most favorable to the government, supports a finding that Jefferson contributed to the rent and sold drugs out of the house. In challenging the sufficiency of the evidence, Jefferson ignores his own statement to police at the time he was arrested that McCoy had been supplying him with crack cocaine which he (Jefferson) had been reselling in $20 quantities. Additionally, both Jefferson and McCoy stated that the guns in the residence were for "protection." Jefferson's challenge to the sufficiency of the evidence is without merit.

  C.Jefferson's Sentence

  Jefferson raises two challenges to the sentence imposed by the district court. First, Jefferson contends the district court erred in increasing his offense level by two levels for obstruction of justice under U.S.S.G. sec. 3C1.1 based on a finding that Jefferson committed perjury when he testified at trial. Jefferson further asserts that the district court erred in sentencing him to the highest possible sentence within the applicable range. With respect to the sec. 3C1.1 enhancement, Jefferson argues that the district court erred in applying the enhancement without first making specific findings of perjury. We review for clear error. United States v. Webster, 125 F.3d 1024, 1037 (7th Cir. 1997). An enhancement under sec. 3C1.1 is appropriate when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide

false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). If a defendant objects to a sec. 3C1.1 enhancement resulting from his testimony at trial, the "district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition" as set forth above. Id. at 95. "[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under sec. 3C1.1 for committing perjury." Id. "A simple denial of guilt . . . is not a basis for an obstruction-of-justice enhancement." United States v. Godinez, 110 F.3d 448, 456 (7th Cir. 1997).

Jefferson filed a timely objection to the presentence report's recommended two-level enhancement under sec. 3C1.1. At the sentencing hearing, the district court, after citing to several portions of the record in which Jefferson denied selling crack cocaine, made the following finding:

It's the Court's finding that in light of all the testimony in this case that the denial of selling crack is a complete and utter falsehood that amounts to perjury, because quite clearly, as well, it's willful. I have no recollection, make no finding that Mr. Jefferson was at all confused or had any sort of bad memory in light of that testimony, particularly when we think about the testimony about the statement immediately after the arrest.

So, he clearly was willful in his presenting false testimony to the jury.

Clearly, Jefferson's contention that the district court did not find he willfully intended to provide false testimony fails. Furthermore, the district court found that the testimony concerned a material matter, stating

this type of falsehoods, and in this particular case, goes directly to issues of Relevant Conduct, which is central to his sentence. And I believe that in light of Mr. Jefferson's obvious effort to impact the sentencing in this case, that the finding of the probation officer on

this issue and the enhancement of two levels for obstruction of justice is appropriate.

These findings are sufficient to satisfy the standards set out in Dunnigan, and the district court's two-level enhancement for obstruction of justice under sec. 3C1.1 is affirmed.

We lack jurisdiction to examine Jefferson's second sentencing challenge. Jefferson concedes his sentence was within the applicable range under the United States Sentencing Guidelines. "Absent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the applicable guidelines range." United States v. Solis, 923 F.2d 548, 551 (7th Cir. 1991). In the present case, there was no such error or misapplication.

III. CONCLUSION

Jefferson's conviction and sentence are AFFIRMED.

FOOTNOTE

/1 There is a discrepancy as to the time line surrounding the warrant's execution. The warrant shows that Magistrate Judge Proud issued the warrant at 10:51 a.m. on June 28, 1999. However, the return of the warrant, which was signed and certified by DEA Agent Christopher Hoyt, shows that the warrant was executed at 10:40 a.m. on June 28, eleven minutes before it was issued. At trial, Agent Hoyt testified that, on the morning of June 28, he was notified by officers on the scene that the confidential informant had completed a third drug buy at the 55th Street house. Hoyt included this information in the application for the warrant which he then presented to Judge Proud. After the judge signed the warrant, Hoyt phoned officers in the vicinity of the 55th Street house to let them know the warrant had been signed and could be executed. On cross-examination, Hoyt stated he made a mistake when he recorded the time on the warrant return and the return should have read 11:40 a.m. instead of 10:40 a.m.