In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1315

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANTONE C. HARRIS,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 04 CR 91—**Sarah Evans Barker**, *Judge*.

_____

ARGUED DECEMBER 5, 2007— DECIDED JULY 1, 2008

_____


Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*.  This is the second appeal in the criminal prosecution of Antone Harris. Based on information provided by Detective Michael Forrest in a warrant affidavit, a magistrate judge issued a warrant to search Harris's residence for cocaine and drug contraband, and the next day they seized several firearms, cocaine base, and paraphernalia commonly used to cook and package crack cocaine. A jury convicted Harris on one count of possession with intent to distribute more than fifty grams of a mixture containing cocaine base. The first time the case was here, we held that the district court

improperly denied Harris a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), when it found that the warrant affidavit contained false statements but relied on information in a supplemental affidavit to establish that probable cause existed for the warrant. We remanded the case, directing the district court to conduct a *Franks* hearing. *See United States v. Harris*, 464 F.3d 733 (7th Cir. 2006) ("*Harris I*"). The district court did so and found that the warrant affidavit did not contain any recklessly-made false statements which were material to the finding of probable cause and that probable cause existed for the search of Harris's residence.

Now, challenging this determination, Harris argues that the district court should not have reconsidered whether the affidavit contained false statements under the law of the case doctrine. Because the law of the case doctrine does not compel a district court to ignore evidence presented at a hearing that clarifies a prior misunderstanding, we find no error in the district court's decision to reconsider one of its findings. We also find no error in the district court's decision not to compel the government to disclose the identity of the confidential informant in this case, as the district court was entitled to credit the testimony of Detective Forrest that the confidential informant existed, and Harris has made no showing that such disclosure was essential to his defense. Therefore, we affirm the decision of the district court.

## I. BACKGROUND

On April 19, 2004, a magistrate judge issued a warrant to search Harris's residence at 2254 N. Goodlet Avenue (the "Goodlet residence") for cocaine and drug contraband. The

warrant was based on the affidavit of Detective Forrest of the Indianapolis Police Department, which stated:

> This affiant bases his belief on the following information: that within the past seventy-two (72) hours of April 19, 2004 a confidential, credible and reliable informant contacted this affiant and stated that within the past seventy-two (72) hours of April 19, 2004 he/she was personally in the residence located at 2254 N. Goodlet Av., Indianapolis, Marion County, Indiana and observed in the possession of Antone Harris B/M and Trent Harris B/M, a substance said informant believed to be Cocaine, an extract of Coca. Said informant was further told by Antone Harris B/M and Trent Harris B/M that the substance they had in their possession was in fact Cocaine, and was for sale. Said informant further stated that both Antone Harris and Trent Harris told the CI that they in fact lived at the residence. This affiant had previously received an anonymous tip from the Dope Hotline that both Antone Harris and Trent Harris were selling crack from this residence. This affiant has personally conducted surveillance on the residence located at 2254 N. Goodlet Av. and have [sic] observed both Antone Harris and Trent Harris coming and going from the residence. This affiant also checked recent police reports for that residence and found that a report was made on 4-2-04 by an animal control officer reference [sic] several dogs at this house. The person the officer talked to at the residence was Antone Harris B/M DOB 7-16-79 and Antone Harris listed his address as 2254 N. Goodlet Av. A check of Antone Harris's crimi-

> nal history reveals that he has a C felony conviction for Possession of Cocaine and Trent Harris has a conviction for C felony Possession of Cocaine as well as an A felony conviction for Dealing Cocaine and a conviction for Dangerous Possession of a Firearm. The CI further stated to this affiant that several handguns are inside the residence and that both Antone Harris and Trent Harris always keep a firearm close to them when inside the residence.

The police executed the warrant on April 20, 2004 (the day after it was issued) and seized cocaine base, several firearms, and paraphernalia commonly used to cook and package crack cocaine. Harris was charged with one count of possession with intent to distribute more than fifty grams of a mixture containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Before trial, Harris filed a motion to suppress the evidence seized during the search, claiming that Detective Forrest's warrant affidavit contained materially false statements. In support of his motion, Harris submitted an affidavit from an Indiana Department of Corrections official verifying that Trent Harris was incarcerated during the time Detective Forrest's affidavit stated he was at the residence, and Harris submitted his own affidavit swearing he was not present at the residence within seventy-two hours of April 19, when the warrant was issued.

In light of this information, the district court ordered the government to respond to the alleged misstatements in the warrant affidavit by filing a supplemental affidavit from Detective Forrest regarding his surveillance of the Harris residence. The supplemental affidavit was drafted sloppily and appears to have created even more confusion (more on this below) regarding the information

in the warrant affidavit. Based on this supplemental affidavit, in which Detective Forrest made statements that appeared to be inconsistent with the warrant affidavit, the district court found that Detective Forrest's warrant affidavit contained three false and misleading statements and omissions: (1) the warrant affidavit erroneously identified Trent Harris as the second individual with Antone Harris; (2) the warrant contained misleading information regarding the date of the confidential informant's ("CI") conversations with Antone Harris because the CI had only visited the Goodlet residence on April 12; and (3) the warrant failed to include the dates of the "Dope Hotline" tip and Detective Forrest's surveillance of the residence. *Harris I*, 464 F.3d at 736-37. The court also found those statements were made either intentionally or recklessly. Nevertheless, the district court determined that Harris was not entitled to a hearing because it concluded that the misstatements in the warrant affidavit were not material to the magistrate's finding of probable cause. In making this determination, the district court relied on information in the supplemental affidavit to bolster a finding of probable cause.

On appeal, we held that allowing the government to bolster the magistrate's probable cause determination through post-hoc findings does not satisfy the Fourth Amendment concerns addressed in *Franks*. *Id.* at 739. Having excised the information that the district court found to be false in Detective Forrest's warrant affidavit, we found that the affidavit lacked a "temporal guidepost" that would prevent the CI's observation that Harris and his brother were selling crack at the Goodlet residence from being stale. *Id.* In other words, there was nothing to suggest that there was ongoing criminal activity at

Harris's residence at the time the warrant was issued. So we remanded the case to the district court and instructed the court to hold a *Franks* hearing to determine whether the search warrant was unconstitutional.

Before holding the *Franks* hearing the district court raised the issue of whether the court should start at square one or apply law of the case principles. After hearing arguments from both sides, the district court declared it would start at square one to give Harris a full chance to challenge the evidence supporting probable cause, but to the extent that the evidence did not conflict with the court's prior rulings, the court would apply law of the case principles. However, if new evidence cast a different light on the court's findings, it stated it would reconsider those findings.

At the hearing, Detective Forrest was the sole witness and was cross-examined by Harris's counsel. Forrest testified that in March 2004, he was assigned to investigate the Goodlet residence based on an anonymous tip made to the Indianapolis "Dope Hotline." He surveilled the residence through March and April 2004 and observed Antone Harris and another individual (whom he believed to be Trent Harris, the brother of Antone Harris) coming and going from the residence.[1] On April 9, Forrest was contacted by a CI about an unrelated investigation. Detective Forrest asked if he knew about the Goodlet residence and the CI said he was familiar with Antone and Trent

---

[1] There appears to be no dispute that this second individual was not, in fact, Trent Harris since he was in jail at the time of the surveillance. The government submits that Detective Forrest misidentified the second individual and that the misidentification was inadvertent.

Harris. Detective Forrest asked the CI to see if anything was happening at the Goodlet residence. On April 12, the CI contacted Detective Forrest and told him that he (the CI) had been to the Goodlet residence and had observed large amounts of cocaine, crack, and guns. The CI also said they (referring to Antone and a person the CI believed to be Trent Harris) were "slinging dope." Detective Forrest understood this to mean they were selling crack. Detective Forrest ran the criminal histories of the Harris brothers and discovered that Antone Harris had a prior conviction for possession of cocaine. On April 18, the CI informed Detective Forrest that he had been back to the Goodlet residence and again had observed that the Harris brothers were selling cocaine. On April 19, Detective Forrest prepared an affidavit in support of an application for a warrant to search the Goodlet residence and, the next morning, the police conducted the search.

Based on Detective Forrest's testimony, the district court found that Harris had not met his burden of demonstrating that the evidence in the warrant affidavit was insufficient to establish probable cause and held that the search of the Goodlet residence was constitutional. The district court explained that the testimony elicited at the *Franks* hearing clarified the sequence of events described in the warrant affidavit and demonstrated that the CI had visited the Goodlet residence and observed criminal activity on April 18, just one day prior to when Detective Forrest applied for a warrant. There was evidence the CI had acquired knowledge of the events he reported firsthand and provided credible detail. That, combined with the relatively short period of time between the CI's observation of the events and Detective Forrest's application for the search warrant, and the extent to which the

police corroborated the CI's statements, supported a finding of probable cause at the time the warrant was issued. In light of this, the court found that the remaining misstatements and omissions in the warrant affidavit (the misidentification of the second man as being Trent Harris and the omission of the dates of the hotline tip and Detective Forrest's surveillance activities) were "minor" and denied Harris's motion to suppress.

The district court also denied Harris's request to compel disclosure of the CI's identity, stating that none of the evidence introduced at the hearing led the court to doubt that the contacts between the CI and Harris had occurred, and that its finding of probable cause could be reached without knowing the identity of the CI.

## II.  ANALYSIS

On appeal, Harris raises two issues regarding the *Franks* hearing. First, he argues that the district court should not have reconsidered its earlier ruling that the warrant affidavit contained misleading information regarding the date of the CI's conversations and contacts with Antone Harris and the second individual. Second, he contends that the district court abused its discretion in refusing to conduct an ex parte hearing to verify the existence of the CI. We address each issue in turn.

### A.  Law of the Case Doctrine

In *Franks*, the Supreme Court held that the Fourth Amendment entitles a defendant to a hearing upon request "where the defendant makes a substantial preliminary showing that a false statement knowingly and inten-

tionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. At a *Franks* hearing, to successfully demonstrate that a search warrant was unconstitutional such that the fruits of the search pursuant to the warrant must be suppressed, a defendant must show by preponderance of the evidence that: (1) the search warrant affidavit contained a false material statement or omitted a material fact; (2) the affiant omitted the material fact or made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement is material to the finding of probable cause. *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008).

Harris contends that the district court was bound by the law of the case doctrine to its initial finding that the warrant affidavit intentionally or recklessly misstated the date of the CI's conversations with Antone Harris and the second individual about purchasing cocaine. Had the court not reconsidered this finding, it likely would not have been able to determine that there was probable cause for the search warrant and Harris's motion to suppress would have been granted. Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation. *Agostini v. Felton*, 521 U.S. 203, 236 (1997). However, the doctrine "authorizes such reconsideration [of a previous ruling in the same litigation] if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006). We have reiterated that the law of the case doctrine is a discretionary doctrine that does not limit the

district court's power to reopen what already has been decided. *See Menzer v. United States,* 200 F.3d 1000, 1004 (7th Cir. 2000) (law of the case doctrine does not bar a trial court from revisiting its own evidentiary rulings); *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995) (the doctrine of the law of the case is "no more than a presumption, one whose strength varies with the circumstances; it is not a straitjacket.").

Here, the district court did precisely what we had directed it to do, which was conduct a *Franks* hearing and determine whether Harris could demonstrate, by a preponderance of the evidence, that the search warrant must be voided. It concluded that he could not. As part of its probable cause analysis, the district court considered whether the CI's information regarding the activities in the Goodlet residence was stale at the time the warrant was issued. *Harris I,* 464 F.3d at 739 (emphasizing the need for a temporal guidepost allowing us to determine whether the CI's information was stale). Detective Forrest's testimony that the CI visited the Goodlet residence on April 18 and observed guns inside the residence, as well as Antone Harris and a second individual continuing to sell cocaine, provided the requisite timeframe that we found lacking in the first appeal. The district court found this weighed in favor of a determination that there was probable cause for the search warrant.

The court did have to reconsider one of its prior findings in order to reach this conclusion. Initially (prior to Harris's first appeal) the court found that the warrant affidavit intentionally or recklessly misstated the date of the CI's conversations with Harris about purchasing cocaine. That finding was based on an apparent discrepancy between the information in the warrant affidavit,

which states that the CI observed criminal activity at the Goodlet residence within seventy-two hours of April 19, 2004, and information in Detective Forrest's supplemental affidavit which stated that the CI observed criminal activity on April 12.[2] In other words, the district court misunderstood the sequence of events and believed the CI had made only one visit to the Goodlet residence, on April 12, 2004. Based on this, the court erroneously found the warrant affidavit to be false as to the timing of the CI's visit to the Goodlet residence. However, once the court heard the testimony of Detective Forrest (which clarified the information in his warrant affidavit and included an explanation for why his supplemental affidavit did not jibe with his warrant affidavit), the court reasonably found that the statement in the warrant affidavit regarding the date of the CI's conversations with Harris was not misleading.[3]

Harris contends that the district court should have been bound by its initial determination that the warrant

---

[2] The court initially read the supplemental affidavit to imply that the CI had spoken to Antone Harris about purchasing drugs only on April 12, 2004, and "merely confirmed Antone Harris was continuing to sell narcotics at the Goodlet Avenue residence" on April 18, 2004. *United States v. Harris*, No. IP 04-91-CR-01 B/F, 2005 WL 82152, at *3 n.3 (S.D. Ind. Jan. 4, 2005). According to the district court, the supplemental affidavit was "disturbingly vague" and muddied the water as to the dates the CI visited the Goodlet residence and observed criminal activity.

[3] It is worth noting as well that the district court did not rely on any additional information in the supplemental affidavit because Detective Forrest's testimony clarified the warrant affidavit.

affidavit contained misleading information as to the date of the CI's conversations about purchasing cocaine with Antone Harris and the second individual in the Goodlet Avenue residence. But this would have forced the court to ignore evidence adduced at the hearing, a result that is neither necessary nor justified. "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous." *Champaign-Urbana News Agency, Inc. v. J. L. Cummins News Co., Inc.*, 632 F.2d 680, 683 (7th Cir. 1980). Having been directed to conduct a *Franks* hearing, it was well within the district court's power to start fresh and consider whether the warrant affidavit contained false statements in light of Detective Forrest's testimony, even if that meant reconsidering its prior findings based on what the evidence at the hearing revealed. So the district court did not abuse its discretion when it determined that it was not bound by the law of the case doctrine from reconsidering whether the statements in the warrant affidavit were materially false.

### B.   Disclosure of the Confidential Informant

Harris moved the district court to compel the government to disclose the identity of and produce the CI, asserting that there is, in fact, no CI and that Detective Forrest fabricated the CI's existence. Because the CI's observations provided the basis for probable cause, Harris argues that the district court abused its discretion in refusing to conduct an in camera, ex parte hearing to determine whether the CI actually existed. We review a district court's denial of a motion for disclosure of the identify of a confidential informant for abuse of discretion and will affirm if any reasonable person could agree

with the district court's decision. *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir. 2001).

The government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant. *Roviaro v. United States*, 353 U.S. 53, 59-60 (1957). This privilege gives way if the defendant proves that the disclosure of the informant's identity "is relevant and helpful" to his defense "or is essential to a fair determination of a cause." *Id.* at 60-61; *Jefferson*, 252 F.3d at 941. To determine whether the government is required to disclose the identity of the informant, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. This depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

We have held that the role of the confidential informant is an important factor to consider when determining whether that informant's identity need be disclosed. *See Jefferson*, 252 F.3d at 942; *United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993). When the confidential informant is a mere "tipster"—someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining a search warrant—rather than a "transactional witness" who participated in the crime charged against the defendant or witnessed the event in question, disclosure will not be required. *See Jefferson*, 252 F.3d at 942 (affirming denial of motion for disclosure when confidential informant was a tipster who provided information that led to a search warrant but was not present when the warrant

was executed); *Bender*, 5 F.3d at 270 (same); *United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985) ("When the informant is a mere 'tipster,' rather than a participant or an eyewitness to the event in question, disclosure will not be required."). In *Roviaro*, disclosure was required where the confidential informant was the sole participant, other than the defendant, in the transaction charged against the defendant. 353 U.S. at 64. The informant's testimony was found to be "highly relevant" because he not only was nearest to the defendant during the alleged criminal transaction, but he also had helped to set up the criminal occurrence and played a prominent part in it. *Id.* at 63-64.

In contrast, the CI here played no part in the transaction charged against Harris. Though the CI's reports that Harris was selling cocaine in the Goodlet residence and that there were guns in the residence led to the acquisition of a search warrant for the home, those activities were not part of the charges against Harris, which were based on his possession of crack cocaine on April 20, 2004. *See, e.g., Bender*, 5 F.3d at 270 (noting that the criminal activity the informant witnessed did not form the basis of the charges against defendant). Furthermore, the CI did not actively participate in the investigation by, for example, purchasing cocaine from Harris, and the CI was not present when the warrant was executed. Because the CI's only role was to provide information that served as the basis for obtaining the search warrant, there is no reason to believe that the CI would testify at trial in such a way that would refute or cast doubt on whether Harris was in possession of crack cocaine on April 20, 2004. The CI is therefore a "tipster" whose identity need not be disclosed.

Although disclosure of the CI might have been helpful to Harris at the *Franks* hearing (rather than at trial), Harris has not demonstrated that he possessed a "genuine need of informant disclosure that outweighs the public's interest [in protecting the free flow of information]." *Id.* According to Harris, disclosure of the CI's identity—or lack thereof—would have proven that Detective Forrest was lying in his warrant affidavit. That is, if the court had summoned the CI, the CI would not have appeared, which would have proven that Detective Forrest lied in his warrant affidavit when he stated that he relied on the information provided by the CI. But Harris was given the opportunity to suggest that Detective Forrest was lying at the *Franks* hearing, when Detective Forrest was subject to cross-examination, and the district court found no reason to question his credibility. *Cf. id.* at 269-70 (confidential informant's testimony had no particular significance to defendant's case because there were other available witnesses who could have corroborated defendant's story). Furthermore, though he was not compelled to do so, Harris could have chosen to testify on his own behalf at the *Franks* hearing to dispute the information in the warrant affidavit.

Assuming Harris is correct that the CI does not exist, nothing would demonstrate that better than if the government were unable to produce the CI to the district court. Furthermore, there is some merit to Harris's argument that an in camera hearing (where the CI's identity would have been disclosed only to the court) would have served both the interests of the government, by preserving the CI's anonymity, as well as the interests of Harris in receiving a fair hearing. Indeed, the district court would have been justified in conducting such a

hearing. However, a district court is not compelled to hold such a hearing, especially when, as here, the court, having heard the evidence, saw no reason to doubt that the CI existed. Our inquiry asks not how we would have ruled had we been considering the case in the first place but rather whether any reasonable person could agree with the district court. *Id.* at 269. In addition, there are policy reasons that counsel against compelling disclosure of the CI here. It is reasonable to assume that a CI might be reluctant to appear before a district court judge and discuss his interactions with an alleged drug dealer, notwithstanding any assertions by the court or the officer regarding the informant's immunity. This reluctance might prevent the CI from participating in future investigations. We have recognized this to be a compelling reason to avoid disclosure unless necessary. *See id.* at 270 (noting that not many people want to become police informants and that disclosure can compromise an informant's safety as well as other investigations). Therefore, even if disclosure of the CI would have been helpful to Harris at the *Franks* hearing, Harris has not demonstrated that such disclosure was so necessary that this presumption must give way. The district court did not abuse its discretion in denying Harris's motion for disclosure and production of the CI.

We note further that because Harris's sentence of 240 months reflects the statutory mandatory minimum, there is no need to remand this case to the district court pursuant to *Kimbrough v. United States*, 128 S.Ct. 558 (2007). *Compare United States v. Taylor*, ___ F.3d ___, 2008 WL 782739, at *2 (7th Cir. Mar. 26, 2008).

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.