In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1541

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEANGELO WILBURN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 07 CR 50007—**James B. Zagel**, *Judge*.

ARGUED APRIL 8, 2009—DECIDED SEPTEMBER 14, 2009

Before EASTERBROOK, *Chief Judge,* and KANNE and
WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. After police raided his apartment and found it stockpiled with guns, drugs, and cash, Deangelo Wilburn challenged the affidavit on which the government's search warrant was based. In an abundance of caution, the district court held a hearing to determine if the affidavit contained material omissions, which, if included in the affidavit, would have caused the magistrate to deny the detective's warrant application.

After hearing the testimony of several witnesses, including Wilburn, the district court found that the affidavit did not contain material omissions and that the warrant was based on probable cause. Wilburn appeals, claiming that the district court erred by sustaining several of the government's objections to his questions concerning two confidential informants. Because we find that the district court did not abuse its discretion in making these evidentiary rulings, or that any errors were harmless, we affirm.

## I. BACKGROUND

In early November 2006, a "concerned citizen" telephoned the Metro Narcotics Division of the Rockford Illinois Police Department and reported witnessing many people entering the residence located at 1341 Charles Street at all hours of the day and night. The caller further asserted that these individuals would stay inside the residence for only one to two minutes. The tipster concluded by alleging that drugs were being sold in the upper of two apartments located in the building.

As a result of this call, Detective Richard A. Gambini, Jr. and his partner periodically watched the Charles Street residence during the following week. They made the same observations: multiple people entering and leaving the residence at all hours of the day and night, who would remain inside the building for less than two minutes. Based upon his training and experience as a police officer, Detective Gambini believed that drugs were being sold inside the building. In order to confirm his belief, he set up a controlled buy.

Detective Gambini and his partner provided a confidential informant ("CI") with buy money, patted him down, and watched him enter the Charles Street building. Less than two minutes later, the CI left the building and produced a bag of crack. The CI informed the detectives that he had purchased the crack from an unidentified African-American man in the upper apartment of the Charles Street residence.

After the controlled buy, the detective appeared before a magistrate and presented an affidavit detailing: (1) the statements of the concerned citizen; (2) the results of his surveillance; and (3) the CI's report of the controlled buy. Based upon this evidence, the magistrate issued a search warrant for the upper apartment in the Charles Street building.

The search revealed crack, cocaine, marijuana, money, assorted drug paraphernalia, speed loaders, and two guns. Deangelo Wilburn, the resident of the upper apartment of the Charles Street building, was present at the time of the search. He was arrested and charged with possession with intent to distribute crack, possession of a firearm by a felon, and possession of a firearm in furtherance of a drug crime. Wilburn moved to suppress the evidence obtained during the search of his apartment, or in the alternative, for a *Franks* hearing to challenge the veracity of the allegations in Detective Gambini's search warrant affidavit. The district court granted Wilburn's motion for a *Franks* hearing.[1]

---

[1] The Supreme Court, in *Franks v. Delaware*, 438 U.S. 154, 155-56

(continued...)

At the hearing, Wilburn alleged that Detective Gambini recklessly omitted certain facts from his warrant affidavit, which, if included, would have caused the magistrate to deny the application for a search warrant. Specifically, he claimed that the affidavit failed to state: (1) that it is impossible to see inside the Charles Street residence from the outside of the building, making it impossible to determine whether a visitor entering the building travels to the lower, or the upper, apartment of the building; (2) the correct number of doors leading to the upper apartment from the building's main hallway; and (3) the nature of Detective Gambini's relationship with the CI. In support of this theory, Wilburn called as witnesses his sister, who lived in the lower apartment in the Charles Street building, and his friend, who frequently visited the building. Wilburn also took the stand and testified that he has never sold drugs. Last, Wilburn called Detective Gambini to the stand and

---

(...continued)

(1978), held that when a defendant makes a substantial preliminary showing that the police procured the warrant to search his property with intentional or reckless misrepresentations in the warrant affidavit, and such statements were necessary to the finding of probable cause, the Fourth Amendment entitles him to an evidentiary hearing during which he may challenge the constitutionality of the search.

In *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984), we extended *Franks*'s holding to apply to omissions as well as misrepresentations, allowing a defendant to challenge an affidavit by showing that the affiant intentionally or recklessly omitted material information.

cross-examined him on his relationship with the CI as well as certain aspects of the "concerned citizen's" phone call.

At the end of the hearing, the district court found that Wilburn failed to establish by a preponderance of the evidence that the affidavit contained material omissions that would have affected the issuance of the warrant. And, it denied Wilburn's motion to suppress the contents of the search. In order to appeal the suppression ruling and other aspects of his *Franks* hearing, Wilburn entered into a conditional plea agreement. On appeal, Wilburn asserts that the district court erred by refusing to allow him to cross-examine Detective Gambini on certain aspects of the controlled buy and tipster's call, which resulted in him being deprived of a fair *Franks* hearing.

## II. ANALYSIS

### A. Evidentiary Rulings and Wilburn's *Franks* Hearing

The district court sustained several objections to Wilburn's questions to Detective Gambini concerning the CI and the concerned citizen. Specifically, Wilburn inquired about: (1) the exact date of the controlled buy; (2) whether the detective had previously worked with the CI; (3) the exact amount of buy money used; and (4) whether the concerned citizen stated that he had personally witnessed drug transactions inside the Charles Street residence. The district court found that the answers to these questions would tend to reveal the identity of the CI or were not relevant to whether the

warrant affidavit had material omissions. Wilburn contends that if the district court had allowed the detective to answer these questions, Wilburn would have been able to show that the controlled buy never occurred. He alleges that these evidentiary rulings deprived him of a fair hearing, and asks us to remand for a new hearing with instructions to require the detective to answer these questions.

Both parties ask us to review for clear error. Clear error is the proper standard of review if a party is challenging a district court's denial of a defendant's request for a *Franks* hearing. *See Zambrella v. United States*, 327 F.3d 634, 638 (7th Cir. 2003). This is not the case here. The district court held a *Franks* hearing, and, on appeal, Wilburn only argues that the district court erred in sustaining certain evidentiary objections during that hearing. We review evidentiary rulings made over a defendant's objections for abuse of discretion. *See United States v. Avila*, 557 F.3d 809, 819 (7th Cir. 2009).

### 1. Questions Concerning the Confidential Informant

The government possesses a limited privilege to withhold the identity of a confidential informant from a criminal defendant. *Roviaro v. United States*, 353 U.S. 53, 59-60 (1957). This privilege evaporates if a defendant proves that the disclosure of the informant's identity "is relevant and helpful" to his defense "or is essential to a fair determination of a cause." *Id*. at 60-61; *cf. United States v. Jefferson*, 252 F.3d 937, 940-41 (7th Cir. 2001) (noting

that we review a district court's denial of a motion for disclosure of a CI's identity for abuse of discretion and will affirm if any reasonable person could agree with the district court's decision). To determine whether the government is required to disclose the identity of the informant, we must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. In doing so, we examine "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*.

In *United States v. Harris*, 531 F.3d 507 (7th Cir. 2008), a factually analogous case, we were faced with a similar legal question—whether the district court abused its discretion by refusing to allow a defendant to uncover the identity of a CI whose statements served as the primary basis for acquiring a search warrant against the defendant. In *Harris*, we noted that the nature of the CI's role was an important factor to consider when determining whether that informant's identity should be disclosed. *Id*. at 515 (citations omitted). We held that when the confidential informant was a mere "tipster"—someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining a search warrant—rather than a "transactional witness" who participated in the crime charged against a defendant or witnessed the event in question, disclosure would not be required. *Id*. ("In contrast, the CI here played no part in the transaction charged against Harris. Though the CI's reports that Harris was selling

cocaine in the Goodlet residence and that there were guns in the residence led to the acquisition of a search warrant for the home, those activities were not part of the charges against Harris, which were based on his possession of crack cocaine on April 20, 2004."). Given that the CI in *Harris* was a "tipster" rather than a transactional witness, we found that the district court did not abuse its discretion in denying Harris's motion to disclose the CI's identity. *Id.*

Here, although the CI allegedly purchased crack from "someone" in the upper apartment at the Charles Street residence, his only function in Wilburn's prosecution was to provide information for obtaining the warrant. Therefore, he is a "tipster" rather than a transactional witness to the crimes charged (possession crimes). *See United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993). As in *Harris*, "[a]lthough disclosure of the CI might have been helpful . . . at the *Franks* hearing (rather than at trial), [Wilburn] has not demonstrated that he possessed a 'genuine need of informant disclosure that outweighs the public's interest,'" *Harris*, 531 F.3d at 515 (citation omitted), because, among other things, Wilburn was able to attack the warrant affidavit through other means. He called witnesses, cross-examined Detective Gambini, and even took the stand to dispute the affidavit's contents. He did not, and does not, articulate how the answers to the questions regarding the informant would have furthered his efforts in discrediting the warrant affidavit. Specifically, Wilburn failed to show how learning the CI's identity would have outweighed the government's

interest in keeping his identity secret. Since Wilburn did not give any genuine reason requiring the government to divulge the CI's identity, the district court was within its discretion in sustaining any questions that tended to reveal it. *See id*. at 516.

Now that we have established that the district court was within its discretion in shielding the CI's identity, our next inquiry must be whether the questions at issue would have tended to reveal the CI's identity. Wilburn asserts that the district court erred in forbidding him from pursuing three areas of inquiry: (1) the date of the controlled buy; (2) the amount of money used in the controlled buy; and (3) whether Detective Gambini had a prior relationship with the CI. The first two areas clearly would tend to reveal the identity of the CI. If Wilburn learned either the date of the controlled buy, or the amount of money used in it, he could search his memory and recall to whom he had sold drugs on that day and/or for that amount. At minimum, this information would have helped Wilburn narrow the list of likely candidates to a few select individuals. So, it was proper for the district court to prevent these lines of inquiry.

However, we cannot see how learning whether Detective Gambini had worked with the CI before the Charles Street controlled buy would have tended to reveal the CI's identity. Certainly, had Wilburn continued with that line of questioning and inquired into the previous testimony of, or previous controlled buys performed by, the CI, the informant's identity might have been tipped. That one question alone, however, appears insufficient to shed any

light on the informant's identity. Further, knowing whether Detective Gambini worked with the informant in any prior cases would have aided the court in assessing the credibility of the CI, given that the detective himself never vouched for it. This said, the error made in excluding this singular question is harmless in light of the other evidence in the affidavit. Detective Gambini testified that he searched the CI, watched the CI enter the building, waited less than two minutes for the CI to leave the building, and searched the CI again, this time finding drugs. This was the only information contained in the affidavit regarding the CI. We fail to see how knowing the past relationship between the detective and the CI would have shown that the detective omitted material information from his affidavit which would have caused the magistrate not to issue the warrant. In sum, the district court's evidentiary rulings on Wilburn's questions to Detective Gambini regarding the CI were either within the court's discretion or did not have a material affect on the outcome of the proceeding, and therefore they did not deprive Wilburn of a fair *Franks* hearing.

### 2.  The "Concerned Citizen's" Phone Call

The district court also sustained the government's objections to Wilburn's inquires into whether the concerned citizen told Detective Gambini whether he or she personally witnessed any drug transactions in the Charles Street residence. The district court ruled that the answers to these questions would not be relevant because the

warrant affidavit did not state or imply that the concerned citizen personally witnessed any such transactions.

As we have discussed, evidentiary rulings are usually left to the sound discretion of the trial court. *See United States v. Millbrook*, 553 F.3d 1057, 1062 (7th Cir. 2009). The district court has "broad discretion to assess the relevancy of proffered evidence," and we will reverse a district court's evidentiary ruling only where there has been a clear abuse of that discretion. *United States v. Fuesting*, 845 F.2d 664, 673 (7th Cir. 1988) (citations omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (finding that district court can impose reasonable limits on testimony that is only "marginally relevant").

As the trial court aptly noted, whether the detective knew if the tipster personally witnessed any drug deals or entered Wilburn's residence is of little import since the affidavit did not include these facts. Wilburn does not make clear how this information would have caused the magistrate to reject the warrant application. The tipster merely got the ball rolling with his or her phone call, which led to police surveillance and eventually the controlled buy. If the tipster had personally witnessed drug transactions inside the building, the evidence against Wilburn would have been stronger, but the lack of this information does not amount to a material omission from the warrant affidavit because the affidavit assumes no personal knowledge on the part of the tipster, and the magistrate issued the warrant in spite of its absence. So, the district court did not abuse its discretion in sustaining the government's objections to this line of questioning.

## B.  The Warrant Was Supported by Probable Cause

Although Wilburn only asks that we remand this matter for another *Franks* hearing with instructions requiring the district court to allow him to inquire about the CI and tipster, it is worth noting that *Harris*, 531 F.3d 507, also supports the district court's finding that probable cause supported the warrant. *Cf. United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008) (holding that great deference must be afforded to the decision of the judge issuing the search warrant). In *Harris*, we upheld the district court's decision not to suppress a warrant after it held a *Franks* hearing where the only evidence in support of the warrant was: (1) a hotline tipster's phone call; (2) a detective's surveillance report; and (3) a CI's allegations that the defendant sold drugs. *Harris*, 531 F.3d at 512-14. In this case, the government presented similar evidence plus the evidence regarding the controlled buy. So, here, we again conclude that the district court was correct in finding that adequate probable cause supported the warrant.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.