ROSS, Judge
Minneapolis police obtained a warrant to search Tyler Dexter's home based on a tip from a "confidential reliable informant" that contraband was inside. The warrant application included no detail indicating how the informant came to observe the inside of the home. Dexter moved to suppress evidence found in the search on the theory that the informant may have been a police agent who unconstitutionally gathered the information by, for example, entering the home without his consent. And he moved the district court to order the state to disclose the informant's identity, the nature of the informant's relationship with police, and the means by which the informant came to see the contraband inside the home. The district court denied the motions, concluding that a common-law privilege protected the informant's identity and that no evidence supported Dexter's police-agent-entered-without-consent theory. Because Minnesota Rule of Criminal Procedure 9.01 entitles Dexter to material related to his defense and the common-law privilege protects only the informant's identity, Dexter was entitled to non-identifying information about the informant's relationship with law enforcement and the *458 means by which the informant came to observe the contraband in the home. We therefore reverse the district court's pretrial decisions and remand.
FACTS
This appeal arises from Minneapolis Police Officer Jesse Standal's application for a warrant to search Tyler Dexter's home. The relevant part of the application consisted of Officer Standal's affidavit swearing to the following facts:
[I] was recently contacted by a Confidential Reliable Informant, CRI hereinafter, who indicated having knowledge of a party by the name of TYLER DEXTER who is invo[lv]ed in the distribution of controlled substances. Specifically, the CRI indicated that TYLER DEXTER is involved in the distribution of large quantities of marijuana and is commonly in possession of several pounds of marijuana at a time and also has several firearms commonly stored near the marijuana. The CRI indicated having previously observed handguns and rifles at the address and in the possession of TYLER DEXTER. The CRI indicated that TYLER DEXTER ... often sells the marijuana out of the garage .... The CRI further indicated that TYLER DEXTER owns several dogs, many of which are pitbull-type breeds, that are present at the address and that several other adults may also reside at the address but that the CRI has only observed TYLER DEXTER to distribute marijuana and possess firearms at the address, most commonly within the garage. This CRI has previously provided your affiant with information that was found to be accurate and reliable which has resulted in the recovery of large quantities of controlled substances as well as firearms.
Based on those facts a district court judge issued a warrant to search Dexter's home. Police found more than eight pounds of marijuana, various narcotics, a Mossberg 715T .22 caliber semiautomatic rifle, and a Smith & Wesson 9mm semiautomatic handgun. The state charged Dexter with both possession and sale of controlled substances.
Dexter challenged the validity of the search warrant in both a motion demanding discovery and a motion to suppress evidence. He argued that the state must disclose how the informant came to observe the contraband in the home and whether the state gave the informant consideration for his tip. He also asserted that the informant's pre-warrant information-gathering activity constituted an unconstitutional search because the informant was acting as an agent of the police and the warrant affidavit included no facts indicating that the informant honored Dexter's Fourth Amendment rights when he positioned himself inside or in the curtilage of Dexter's home to gather the information conveyed to police. He maintained that the state's refusal to disclose how the informant observed the contraband violated Minnesota Rule of Criminal Procedure 9.01. Dexter added that he has the right to the informant's identity to call him or her as a witness at the hearing on his motion to suppress. The state argued that Dexter had not overcome the presumption that the state is privileged to withhold the informant's identity.
At the hearing on the discovery dispute, Dexter's attorney explained that he needed information about the relationship between the informant and police so that he could show that the informant was a police agent. And he urged that Dexter was entitled to know how the informant observed the inside of his home, asking rhetorically, "Did somebody break into my client's *459 house?," and arguing, "If [the informant] is a government agent ... we have to know how that entry was made." The district court understood, summarizing Dexter's primary issue as being whether the "search warrant [is] based upon information obtained by wrongdoing by the State." Dexter's attorney agreed, emphasizing that, although warrant affidavits customarily describe how an informant learned the information conveyed to police, Officer Standal's affidavit said nothing about how the informant came to observe the contraband. And he argued that the omission invites the question of whether the informant was acting as a police agent who gathered the information while violating Dexter's Fourth Amendment rights. He acknowledged that the issue did not require the informant's identity, conceding, "We don't have to know particularly who this was but we have to know how long have they been working for the government[.] What is the consideration they are receiving from the government? Is it to avoid charges and imprisonment or is it to get paid cash? Has this been a two-week relationship or a two-year relationship[?]" And he clarified the concession further, saying, "I am comfortable with the Court ... fashioning an Order that gets to these issues even if the identity of [the informant] is somehow necessary to be not disclosed. We need to know the relationship for purposes of our argument."
The state insisted that all of the requested information was privileged and that Dexter's mere speculation that the undisclosed information might implicate his constitutional rights could not overcome the privilege. The district court agreed with the state. It denied Dexter's motion for discovery, reasoning that his "request to disclose the identity of the [informant] is founded on mere speculation." The district court never expressly addressed Dexter's modified request for limited, non-identity disclosure about the informant's information-gathering conduct and relationship with the state.
At the hearing on his motion to suppress, Dexter argued that the state failed to establish that it did not violate his constitutional rights by the informant's information-gathering conduct. The district court rejected the argument based on the words in the warrant application, which did not include any facts supporting Dexter's claim. The district court therefore denied Dexter's suppression motion.
The parties agreed to a stipulated-facts bench trial under Minnesota Rule of Criminal Procedure 26.01, subdivision 3, and the state agreed to dismiss the drug-possession charge. The district court found Dexter guilty of fifth-degree sale of controlled substances and imposed a stayed, three-year prison sentence.
Dexter appeals.
ISSUE
Did the district court abuse its discretion by denying Dexter's motion to discover information about the confidential informant relevant to Dexter's motion to suppress evidence?
ANALYSIS
Dexter argues that the district court improperly denied his demand for disclosure of the informant's identity or, in the alternative, disclosure of the informant's relationship with law enforcement. We review the district court's decisions to issue a discovery order and to disclose a confidential informant's identity for an abuse of discretion. State v. Underdahl , 767 N.W.2d 677, 684 (Minn. 2009) ; State v. Rambahal , 751 N.W.2d 84, 90 (Minn. 2008). A district court abuses its discretion if it makes unsupported fact findings or *460 improperly applies the law. Underdahl , 767 N.W.2d at 684.
Dexter's arguments implicate two different issues. Dexter argues principally that the district court abused its discretion by refusing to order the state to disclose the informant's identity. He argues in the alternative that the district court abused its discretion by denying his motion to order the state to disclose information about the informant's relationship with law enforcement and the means by which the informant observed the contraband in his home. Only the second argument is convincing.
We reject Dexter's argument that the district court abused its discretion by denying his motion to order the state to disclose the informant's identity. The state has the privilege to withhold the identity of law-enforcement informants. Rambahal , 751 N.W.2d at 90 (citing Roviaro v. United States , 353 U.S. 53, 59, 77 S. Ct. 623, 627, 1 L.Ed.2d 639 (1957) ). The privilege is limited to meet its purpose. Id. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement" in that it "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro , 353 U.S. at 59, 77 S. Ct. at 627. And the privilege evaporates when the disclosure of the informant's identity tends to help the defense or is otherwise essential to a fair proceeding. Rambahal , 751 N.W.2d at 90. It is the defendant's burden to establish the need for disclosure. Id.
Dexter did not meet his burden to show any need to know the informant's identity. Given the importance of the privilege, a defendant cannot overcome it by relying on mere speculation that disclosure will help in his defense. State v. Ford , 322 N.W.2d 611, 614 (Minn. 1982). Dexter all but admitted to the district court that his defense did not depend on knowing the informant's identity. And he offers no persuasive argument on appeal demonstrating that he needed the identity to advance any cogent defense theory.
But Dexter also sought to discover nonprivileged information. "[W]here the disclosure of [otherwise discoverable information] will not tend to reveal the identity of an informer, the contents are not privileged." Roviaro , 353 U.S. at 60, 77 S. Ct. at 627. Dexter expressly requested the district court to order the state to disclose non-identifying information. The district court's orders did not address that limited request, but we think the request has merit.
Dexter's request that the district court order the state to disclose the non-identifying details outlining the informant's relationship with police and the means by which the informant came to observe the contraband in Dexter's home is consistent with Dexter's right to discover nonprivileged information. The applicable discovery rule declares broadly that "[t]he prosecutor must, at the defense's request ..., allow access at any reasonable time to all matters within the prosecutor's possession or control that relate to the case." Minn. R. Crim. P. 9.01, subd. 1. We have no difficulty concluding that the requested information "relate[s] to the case." This is because the district court must suppress evidence that police found during a search in the execution of a warrant that was itself issued only because of unconstitutionally obtained information. See State v. Carter , 697 N.W.2d 199, 212 (Minn. 2005). This legal proposition was the essence of Dexter's motion to suppress. Had the district court not denied his discovery request, argues Dexter, he may have garnered *461 the evidence necessary to require suppression and, consequently, acquittal.
Dexter is correct that he may be entitled to suppression of evidence from the search depending on the content of the information he is entitled to receive. If the informant's relationship with the police was such that he or she was an instrument or agent of the state, then the informant qualifies as a state actor whose conduct is restricted by constitutional protections. That is, the fact that a private civilian rather than a police officer "made the search and seized the contraband does not always isolate his or her conduct from Fourth Amendment scrutiny." State v. Buswell , 460 N.W.2d 614, 618 (Minn. 1990). When the evidence demonstrates that a private person was really acting "as an instrument or agent of the state when conducting the search, the search is subject to Fourth Amendment constraints." Id. (quotation omitted). And those constraints prohibit a police agent from warrantlessly entering another's home without consent. See Hoffa v. United States , 385 U.S. 293, 300-03, 87 S. Ct. 408, 413-14, 17 L.Ed.2d 374 (1966). Whether the informant was a police agent and, if so, whether he or she gained entry without Dexter's consent, therefore "relate[s] to the case" because the answers to these issues might undermine the warrant and require suppressing the evidence.
The district court misapplied the law by implicitly treating the requested, non-identifying information as falling under the state's privilege. We do not suggest that the district court should have ordered the state to disclose any information that would have revealed the informant's identity. Nor do we intend to imply that the state has a general duty under rule 9.01 to disclose relationship information in every case. Our conclusion rests on the unique facts here, where the affidavit's omissions dovetail with the defendant's evidence-suppression theory. We therefore reverse the district court's denial of Dexter's motion to discover non-identifying information and remand for the district court to fashion the appropriate, limited order for disclosure. Because the district court's denial of Dexter's motion to discover prevented Dexter from obtaining evidence relevant to his motion to suppress, we also instruct the district court to allow Dexter the opportunity to file a new motion to suppress, if he chooses to do so, after the state complies with the disclosure order.
We believe that the dissent opines mistakenly that "the district court did not err by not ordering the state to disclose information concerning the means by which the confidential informant observed controlled substances and firearms in Dexter's home because Dexter did not ask the district court for disclosure of such information." We read the record differently. The record establishes that Dexter, the prosecutor, and the district court all understood and treated Dexter's motion for disclosure broadly to include the means by which the informant learned about the contraband in Dexter's home. The dissent seems to overlook the context of Dexter's disclosure request, which he repeatedly explained was to develop his theory of his suppression motion: the district court should suppress evidence obtained, he argued repeatedly, because the informant was a police agent whose means of obtaining the information inside Dexter's home may have violated Dexter's Fourth Amendment rights. Disclosure of both the relationship information and the means of entry were therefore both necessarily part of the disclosure request. This became clear during the hearing in the district court. Parties often clarify or reasonably broaden the scope of their written trial motions during their arguments, and that is what happened here.
*462 Dexter's attorney insisted that Dexter had the right to know how the informant observed the inside of his home, and he pressed this by rhetorically framing the issue to include the means of the informant's knowledge: "Did somebody break into my client's house?" And he emphasized, "If [the informant] is a government agent ... we have to know how that entry was made." The dissent's impression that the district court did not understand the motion this way is belied by the district court's responsive, express summary of the primary issue as being whether the "search warrant is based upon information obtained by wrongdoing by the State. " (Emphasis added.)
We agree completely with the dissent's caution that "[t]his court should not, on its own initiative, consider whether the district court erred by not ordering the disclosure of information concerning the means by which the confidential informant observed controlled substances and firearms in Dexter's home." But we disagree with the dissent's premise that "Dexter does not argue that the district court erred by not ordering the disclosure of [this] information." Dexter's principal request on appeal is that we reverse the district court's denial of his motion for disclosure. Dexter's appeal brief sufficiently makes the case that he is seeking a complete reversal of the district court's pretrial orders, arguing expressly, "To justify a warrantless entry and search of a home, the state has the burden of showing the existence of either (1) consent or (2) probable cause and exigent circumstances. The district court received no evidence regarding consent to CRI's search of the residence of the Appellant." And it concludes, "[T]he matter should be remanded to district court to determine the constitutionality of the CRI's search of the Defendant's residence." Although Dexter's arguments on appeal and his requests for relief could have been fashioned more clearly, we are satisfied that we have interpreted them fairly and that the district court abused its discretion by failing to allow Dexter to obtain the non-identifying information to address whether the "search warrant is based upon information obtained by wrongdoing by the State."
And finally, our opinion is consistent with the dissent's lengthy discussion concluding that other courts "have focused on the risk that disclosure of information peripheral to a confidential informant's identity will allow a defendant to figure out the confidential informant's identity." This issue is not contested. Dexter already conceded that the district court could exclude any information from which he could discern the informant's identity, and we are confident that the district court will honor that concession and carefully fashion any order for disclosure to include only non-identifying information.
DECISION
The state's common-law privilege to withhold the identity of police informants does not protect non-identifying information about an informant or the informant's information-gathering activities. Because the privilege does not protect this information and the information relates to the case under Minnesota Rule of Criminal Procedure 9.01 based on the suppression arguments and substantive omissions in the warrant affidavit, the district court abused its discretion by denying Dexter's motion to compel its disclosure.
Reversed and remanded.
Concurring in part, dissenting in part, Johnson, Judge
JOHNSON, Judge (concurring in part, dissenting in part)
I concur in the opinion of the court insofar as it concludes that Dexter is not *463 entitled to the disclosure of the identity of the confidential informant. I also concur in the opinion of the court insofar as it concludes that Dexter is entitled to the disclosure of information concerning the relationship between the confidential informant and law enforcement; such information is not protected by the informer's privilege, so long as the information may be disclosed without creating any risk that a defendant will be able to discern the confidential informant's identity. But I respectfully disagree with the opinion of the court insofar as it concludes that Dexter is entitled to the disclosure of the means by which the confidential informant observed controlled substances and firearms in Dexter's home. I write separately to explain why the court should not grant appellate relief with respect to that issue.
A.
As an initial matter, the district court did not err by not ordering the state to disclose information concerning the means by which the confidential informant observed controlled substances and firearms in Dexter's home because Dexter did not ask the district court for the disclosure of such information. In the memorandum supporting his discovery motion, Dexter asked the district court to order the state to disclose "the [confidential informant's] name, address, prior record of criminal conviction[s], as well as any consideration received in exchange for orchestrating the crimes alleged." The district court analyzed the argument presented in Dexter's motion papers and reasoned that he had "failed to present evidence to convince this Court that the [confidential informant's] identity or compensation is necessary to prepare his defense or to ensure fundamental fairness in the determination of the defendant's guilt." In his appellate brief, Dexter does not argue that the district court erred by not ordering the disclosure of information concerning the means by which the confidential informant observed controlled substances and firearms in his home. Rather, he argues that the district court erred by not ordering the disclosure of two types of information: the confidential informant's identity and the relationship between the confidential informant and law enforcement. This court should not, on its own initiative, consider whether the district court erred by not ordering the disclosure of information concerning the means by which the confidential informant observed controlled substances and firearms in Dexter's home.
B.
Assuming without conceding that this court should consider that issue, I would apply caselaw that imposes a more stringent standard on a request for disclosure of a confidential informant's identity for purposes of a motion to suppress evidence.
The opinion of the court relies on Roviaro v. United States , 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957), and a Minnesota opinion that applies Roviaro , see State v. Rambahal , 751 N.W.2d 84 (Minn. 2008). The Roviaro opinion is concerned with a defendant's request for the disclosure of a confidential informant's identity for purposes of trial. 353 U.S. at 58-65, 77 S. Ct. at 626-30. The Minnesota multi-factor test that is based on Roviaro considers, among other things, whether the testimony of a confidential informant "will be material to the issue of guilt." See Rambahal , 751 N.W.2d at 90.
More pertinent to this case is the Supreme Court's opinion in McCray v. Illinois , 386 U.S. 300, 87 S. Ct. 1056, 18 L.Ed.2d 62 (1967), which is concerned with a defendant's request for the disclosure of a confidential informant's identity for purposes of a motion to suppress evidence.
*464 Id. at 304-14, 87 S. Ct. at 1059-64. The McCray Court noted the difference between that case and Roviaro , stating, "The Roviaro case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt." Id. at 309, 87 S. Ct. at 1061. The McCray Court also quoted with approval a state-court opinion that highlighted the difference:
We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.
....
The Fourth Amendment is served if a judicial mind passes upon the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an ex parte proceeding. As we have said, the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told. If the magistrate doubts the credibility of the affiant, he may require that the informant be identified or even produced.
Id. at 307-08, 87 S. Ct. at 1060-61 (quoting State v. Burnett , 42 N.J. 377, 201 A.2d 39, 44-45 (1964) (internal citations omitted)).
In State v. Purdy , 278 Minn. 133, 153 N.W.2d 254 (1967), the Minnesota Supreme Court applied McCray in a case in which the defendant moved to suppress evidence obtained in a search incident to an arrest that was based on a confidential informant's tip. Id. at 256-58. The supreme court quoted at length from McCray and summarized the applicable law as follows: "It appears to have become well settled that when a trustworthy informant is a mere transmitter of information and not a competent witness to the crime itself, and the name of the informant is not essential to the defense, the informant's name need not be disclosed when the information was used as a basis for probable cause to search or arrest." Id. at 262.
The supreme court has, on a few occasions, considered a request for the disclosure of a confidential informant's identity in connection with a challenge to a search warrant. In State v. Wiley , 295 Minn. 411, 205 N.W.2d 667 (1973), the supreme court rejected an argument that the district court erred by not ordering the disclosure of the identity of the confidential informant whose information provided probable cause for a search warrant based on "all of the circumstances of this case." Id. at 676 ; see also State v. Lorenz , 368 N.W.2d 284, 286-87 (Minn. 1985) ; State v. DeSchoatz , 280 Minn. 3, 157 N.W.2d 517, 521-22 (1968). In State v. Luciow , 308 Minn. 6, 240 N.W.2d 833 (1976), the supreme court stated generally that a defendant may be "entitled to some form of disclosure of an informant's identity if [the defendant] can establish that such disclosure is necessary to complete his evidentiary attack on the supporting affidavit." Id. at 839. The supreme court also stated that rule 9 of the rules of criminal procedure "impliedly provides *465 for the disclosure of the informant's identity upon court order in those limited situations where it is clear that such information is essential to the establishment of probable cause." Id. The supreme court reversed and remanded for either an in camera review of the confidential informant's identity or disclosure to the defendant. Id. at 841. The supreme court's reversal may be explained by the highly unusual factual circumstances of the case; a third party had stepped forward to claim that she was the informant who had provided the information on which the search-warrant application was based, and the law-enforcement officer who submitted the application engaged in conduct that corroborated her claims to some degree. Id. at 836, 839-41.
C.
Both Roviaro and McCray must be read in conjunction with Franks v. Delaware , 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978). In Franks , the Supreme Court stated that an affidavit supporting a search-warrant application is presumptively valid if, on its face, it provides probable cause to justify a search. Id. at 164-65, 171, 98 S. Ct. at 2681, 2684. A defendant may invalidate a search warrant by challenging the truthfulness of factual statements made in an affidavit supporting the warrant. Id. at 155-56, 98 S. Ct. at 2676. If a defendant seeks to invalidate a search warrant under Franks , the defendant must show that "(1) the affiant deliberately made a statement that was false or in reckless disregard of the truth, and (2) the statement was material to the probable cause determination." State v. Andersen , 784 N.W.2d 320, 327 (Minn. 2010) (quotation omitted); see also State v. Doyle , 336 N.W.2d 247, 250 (Minn. 1983). But not every Franks motion requires an evidentiary hearing. If a defendant makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks , 438 U.S. at 155-56, 98 S. Ct. at 2676. But if a defendant cannot make such a showing, a district court may deny a Franks motion without an evidentiary hearing. Id. at 171, 98 S. Ct. at 2684. In this case, Dexter did not make a Franks motion. Regardless, he should not be allowed to obtain information concerning a confidential informant whose tip provided probable cause for the issuance of a search warrant unless he can make the showing required by Franks . See State v. Moore , 438 N.W.2d 101, 105-07 (Minn. 1989).
D.
In all of the cases cited above, the defendant sought the disclosure of a confidential informant's identity. The Minnesota appellate courts have not been asked to consider whether the state must disclose information that is peripheral to a confidential informant's identity. But the federal appellate courts have considered the issue, and they consistently have concluded that the disclosure of peripheral information is not appropriate to the extent that such a disclosure would effectively allow the defendant to discern the identity of the confidential informant.
For example, in United States v. Napier , 436 F.3d 1133 (9th Cir. 2006), the court stated that the informer's privilege "protects more than just the name of the informant and extends to information that would tend to reveal the identity of the informant." Id. at 1136. The court reasoned that "the scope of the ... privilege is as great as the underlying purpose of *466 the privilege" and that "[t]he purpose of the privilege is to protect the anonymity of the confidential source." Id. (quotations omitted).
Similarly, in United States v. Cartagena , 593 F.3d 104 (1st Cir. 2010), the defendant sought the disclosure of the contents of confidential informants' recorded conversations with each other but "not their actual identities." Id. at 113. The government had argued that "disclosure of the informants' communications would effectively disclose their identities and put them at risk because of the specific context in which the communications were made." Id. The court agreed, reasoning that "if disclosure of a communication's contents will also tend to reveal an informant's identity, the contents are also privileged." Id.
Likewise, in United States v. Wilburn , 581 F.3d 618 (7th Cir. 2009), the court asked whether the information sought by the defendant "would have tended to reveal the [confidential informant's] identity." Id. at 624. The court concluded that the defendant was not entitled to information concerning "the date of the controlled buy" or "the amount of money used in the controlled buy" because such information "clearly would tend to reveal the identity of the [confidential informant]." Id. The court reasoned as follows: "If Wilburn learned either the date of the controlled buy, or the amount of money used in it, he could search his memory and recall to whom he had sold drugs on that day and/or for that amount. At a minimum, this information would have helped Wilburn narrow the list of likely candidates to a few select individuals." Id. The court distinguished information concerning dates and money from information concerning whether a law-enforcement officer "had a prior relationship with the [confidential informant]," which, by itself, was deemed "insufficient to shed any light on the informant's identity." Id. This part of the Wilburn opinion supports this court's conclusion that Dexter is entitled to information concerning the relationship between the confidential informant and law enforcement.
In short, the federal courts that have considered the issue on which this court grants relief have focused on the risk that disclosure of information peripheral to a confidential informant's identity will allow a defendant to figure out the confidential informant's identity, and those courts have tolerated no such risk. This court, however, has concluded that Dexter is entitled to the disclosure of "non-identifying" information, without careful consideration of the risk that Dexter will be able to figure out the identity of the person who supplied law enforcement with probable cause to search his home.
In sum, I would not consider whether Dexter is entitled to the disclosure of information concerning the means by which the confidential informant observed controlled substances and firearms in his home, and if I were to consider the issue, I would conclude that he is not so entitled.